THE STATE, DEFENDANT IN ERROR, v. CHARLES W.
DAVIS, PLAINTIFF IN ERROR.

Argued February 21, 1905—Decided June 12, 1905.

1. The act entitled "An act for the protection of pigeons and other
   fowl and constituting the violation of its provisions a misde-
   meanor," approved April 12th, 1904, is not in conflict with
   article 4, section 7, paragraph 4, of the state constitution, which
   requires that every law shall embrace but one object, and that
   shall be expressed in its title.
2. If a provision in the body of an act is not embraced in the title,
   and makes the body of the act unconstitutional to that extent, the
   unconstitutional provision will be excised and the rest of the act
   will be upheld if it appear that what remains is the primary object
   of the legislature and that it would have passed the act without
   the excised portion.
3. It is not a curtailment of the right of property to prevent a person
   from using his animals or fowls as a target, to be shot at for
   amusement or as a test of skill in marksmanship.
4. Under the police power, the legislature may prescribe how animals
   may be killed by their owner in order that they may be used for
   food.   They may fix by statute the times, places and manner of
   such killing.   By limiting the method or prescribing the manner
   of killing they do not infringe upon the rights of property of the
   owner.

On error to Burlington Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT and GARRETSON.

For the plaintiff in error, *Sherrerd Depue* and *Samuel Kalisch,* and *Samuel Pennington Rotan* (of the Pennsylvania bar).

For the defendant in error, *Samuel A. Atkinson, Theodore Backes* and *Robert H. McCarter,* attorney-general.

The opinion of the court was delivered by

FORT, J. The defendant was indicted in the Burlington Oyer for misdemeanor, in that he did, on the grounds of the Riverton Gun Club, use a live pigeon for the purpose of a target to be shot at for amusement and as a test of skill in marksmanship, contrary to the statute.

The proof showed that the defendant shot at a live pigeon thrown from a trap as a target, and for amusement. The bird was instantly killed.

At the trial the shooting was not denied, but the defence was interposed that the place of the shooting was upon the private grounds of the Riverton Gun Club, and at a pigeon the property of the defendant, and that any act which made it an offence for an owner of a pigeon to thus kill his own property was unconstitutional.

The statute under which the indictment was found reads as follows:

"An act for the protection of pigeons and other fowl, and constituting a violation of its provisions a misdemeanor.

"1. Any person who uses a live pigeon, fowl or other bird for the purpose of a target, or to be shot at for amusement, or as a test of skill in marksmanship, or shoots at a bird used as aforesaid, or is a party to such shooting, or leases any building, room, field or premises, or knowingly permits the use thereof for the purpose of such shooting, shall be guilty of a misdemeanor, and shall be liable to a penalty of sixty dollars for each violation of this act, and to an additional penalty of twenty-five dollars for each pigeon, fowl or other bird shot at

or killed in violation thereof; but nothing in this act shall be held to apply to the shooting of game.

"2. All acts and parts of acts, general, special or local, inconsistent with this act, be and the same are hereby repealed."

This act was approved April 12th, 1904. *Pamph. L., p.* 515.

The first objection to the act is that its object is not expressed in its title, and hence it is void under article 4, section 7, paragraph 4, of our state constitution, which declares that, "to avoid improper influences which may result from mixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title."

One of the arguments of the counsel for the defendant upon this point is thus stated:

"(*a*) The title to the act related to 'pigeons and other fowl.' In the body of the act there is excepted from its application the 'shooting of game;' the body of the enactment, therefore, relates only to pigeons, fowl or other birds, and not to that sort coming within the definition of game. The title of the act is therefore more broad than the scope of the enactment."

We are unable to see the force of this reasoning.

If wild game may be deemed to be within the designation of "fowl," then the exception of the "shooting of game" is necessary; otherwise all shooting would be prohibited by the statute. And it is not within the constitutional interdiction to except out of an act any class, otherwise within it, which the legislature does not desire to cover by the enactment. An act, therefore, whose title is broad enough to cover all species of fowl creation, but which, in a proviso or other clause, such as is in the act before us, excepts out of the operation of the statute a class of fowl creation, namely, game, is not an unconstitutional statute because of the fact that the title states the object of the act more broadly than is the enacting part thereof, with the special class excepted.

What shall be embraced, of the class covered by the object stated in the title, is a legislative question. The only question

for the court is, does the class covered by the prohibition of the statute come within the statute?

The "object" of an act, as used in the constitution, means the end or aim of the statute.

There must not be "mixed in one and the same act such things as have no proper relation to each other." To except from an act one of the class which the act would otherwise interdict is not to intermingle subjects having no relation to each other, but to legislate, as it seems to us, upon a subject covered by the statute and germane to its provisions, and to give expression in the one act to the legislative purpose covering all the subjects embraced within the object of the statute.

It is further argued that, while the title of the act relates to "pigeons and other fowl," the body of the act relates to "pigeon, fowl *or other bird*," it being contended that "or other bird" was intended to include, and did include, objects not within the designation of "pigeons and fowl." Whether the expression "or other bird" is not within the generic word "fowl" as used in the title of the act is not clear. All the lexicographers now give the primary definition of "fowl" as "any bird." They have very ancient use of the word to justify this definition. In Genesis 1:26, we find "Let them have dominion over  *  *  *  the fowl of the air." Again, in Matthew 6:26, we find the expression, "Behold the fowls of the air," &c. Shakespeare uses the expression, "Like the flight of fowls." The words "fowl" and "bird" have been used interchangeably for all generations.

So it is not clear that the title is not as broad as the body of the act, even though the title does not use the words "or other bird," but only the word "fowl." But even if it were otherwise, it is immaterial, because, if the provision respecting "other bird" is not embraced in the title, and makes the body of the act unconstitutional to that extent, the unconstitutional provision will be excised and the rest of the act will be upheld if it appears that what remains is the primary object of the legislature and that it would have passed the act without the excised portion. *State* v. *Johnson,* 30 *Vroom*

535; *Johnson* v. *Asbury Park,* 31 *Id.* 427; *McArdle* v. *Jersey City,* 37 *Id.* 590; *Riccio* v. *Hoboken,* 40 *Id.* 649.

A further contention upon this same line is that the title of the act limits the offence interdicted by it to being a misdemeanor, and that the body of the act broadens this and creates, in addition to the misdemeanor, a penalty which may be enforced against the offender in addition to punishing his offence as a misdemeanor.

We are unable to see that it works the result which the defendant alleges. The act, we think, makes the offence in the statute a misdemeanor, and provides what the penalty shall be upon conviction. If the act had stopped after making a violation of its provisions a misdemeanor, the punishment under it would have been that fixed by the Crimes act for misdemeanors, namely, three years in the state prison or $1,000 fine, or both, in the discretion of the court. *Pamph. L.* 1898, *p.* 854, § 218. But the legislature has, we think, in this act, fixed the punishment to be imposed upon conviction under it. For the offence of leasing a building, rooms, field or premises, or knowingly permitting the use thereof for the purpose of shooting, the punishment upon conviction is $60 fine, and for the violation of the act, accompanied as a part of the violation, by shooting at a bird, it is $60, plus an additional penalty of $25 for each bird so shot at. The act does not warrant the bringing of a civil action for the penalty named in it. The penalty fixed by the act is limited solely to its imposition by way of punishment after conviction upon indictment for the violation of the act.

Another ground alleged is that the act of April 12th, 1904, does not make it an offence to shoot pigeons upon the grounds of the Riverton Gun Club. The contention is that by a supplement to the act entitled "An act for the prevention of cruelty to animals," approved April 2d, 1889, it is enacted: "That nothing in this act contained shall be held to prohibit or affect the shooting of pigeons from a trap upon the grounds of any shooting or athletic club; *provided,* the birds are gathered up immediately upon being so shot, or the shooting or taking game or game fish in such manner and at such

times as is or may be allowed or provided by the laws of this state." *Pamph. L.* 1889, *p.* 144.

We are unable to see any force in this contention.

The act of 1889 is a supplement to the act with relation to cruelty to animals, and its sole effect was to enact that nothing in the act relating to cruelty to animals should be held to prohibit the shooting of pigeons from traps. But for that supplement it was evidently thought the Cruelty to Animals act would prohibit the shooting of pigeons. The act of 1904, under which the defendant was convicted, is an independent statute, not a supplement to the Cruelty to Animals act, and embraces the whole subject-matter of the offence for which the defendant was convicted. The act of April 2d, 1889, has no effect by way of limitation or exception upon the act of April 12th, 1904.

Another contention strongly urged is stated by the defendant's counsel in this way: "That the prohibition of the statute is without regard to the ownership or property right in the bird at which the shot was fired. Under the statute it is as much an offence to shoot at one's own bird as at the bird of another; the property owner shooting his own bird upon his own property is within the penalty denounced by the statute."

This statement is accurate if the shooting be at the bird as a target, or for amusement or as a test of skill in marksmanship. The legislature may prescribe how animals may be killed by their owner in order that they may be used for food. They may fix by statute the times, places and manner of such killing. All these things are within the police power. By limiting the method or prescribing the manner of killing they do not infringe upon the rights of property of the owner.

In every state the keeping of live stock is under police regulation. Justice Gray, in *People* v. *Warden,* 144 *N. Y.* 535, says: "The police power extends to the protection of persons and of property within the state. In order to secure that protection they may be subjected to restraint and burdens by legislative acts. If the act is a valid and reasonable

exercise of the power of the state, then it must be submitted to as a measure designed for the protection of the public, and to secure against such danger, real or anticipated, from a state of things which modifications in our social or commercial life have brought about. * * * The individual must sacrifice his particular interest or desires, if the sacrifice is a necessary one, in order that organized society as a whole shall be benefited. That is a fundamental condition of the state, and which, in the end, accomplishes by reaction the general good from which the individual must also benefit. * * * Courts should always assume that the legislature intended by its enactment to promote those ends, and if the act admits of two constructions, that should be given to it which sustains it and makes it applicable in furtherance of the public interest."

It is not a curtailment of the rights of property to prevent a person from using his animal or fowl as a target, to be shot at for amusement or as a test of skill in marksmanship. The right to exercise these peculiar privileges has never been stated to be among the absolute or relative rights of man. To take life, or to torture for the enjoyment of the torturer, has never been considered among civilized people as an absolute right in the owner of property having life. Many states hold it to be within the prohibition of their Cruelty to Animals act to do the things prohibited by our statute, and that at least domesticated birds or fowls are embraced within the word "animal." None of the states, so far as my research goes, have held it not to be within the power of the legislature to regulate the manner of killing animals, and to define and prohibit such killing. *State* v. *Bruner,* 111 *Ind.* 98; *State* v. *Giles,* 125 *Id.* 124; *People* v. *Klock,* 48 *Hun* 275; *Commonwealth* v. *Turner,* 145 *Mass.* 296; *Waters* v. *People,* 23 *Colo.* 33; *State* v. *Porter,* 112 *N. C.* 887; *State* v. *Neal,* 120 *Id.* 613; *Paine* v. *Berg,* 1 *N. Y. City Ct.* 160. The rule in England is the same. *Budge* v. *Parsons,* 3 *Best & S.* 382; *Colam* v. *Pagett,* 12 *Q. B. Div.* 66.

In *Waters* v. *People,* 23 *Colo.* 33; 58 *Am. St. Rep.* 215, a conviction under a statute similar to our own for shooting,

for amusement, at doves on club grounds, by club members, who owned the birds, and who after they were killed used them for food, was held to be good. The court in that case said: "With the policy or wisdom of such enactments we have nothing to do. Our duty and our only concern is to give proper effect to such legislation, and to interpret or construe its provisions in the light of the object which the general assembly had in view when the law was passed in response to the demand of an enlightened public sentiment. * * * Where, as here, the acts charged are admittedly done, not to furnish food, but merely for the sport and amusement of the defendant and his associates, the facts clearly bring the case within the bar of the statute."

The act challenged in this case seems to us to be entirely within the police power of the legislature, over this class of property, in its right of restriction in the manner and purpose of its destruction. No man may torture his animal property, even if he have the right to kill it. Nor may he use it, in the killing, as a means of amusement or pleasure to himself or others. That he may kill animals which he may own and which he may use as food is conceded, but in the interest of the humane destruction of such animal life the legislature, under the police power, has the power to specify in what manner such killing may not be done. This does not deprive him of any property right. It simply defines the mode in which he may exercise the right.

In the case before us the shooting was for mere sport or amusement, and was clearly within the interdiction of the statute.

The judgment of the Burlington Quarter Sessions is affirmed.