LESTER HARRIMAN, Administrator, Appellant, v. AFTON, Town of, Appellee.

No. 44308

660

August 5, 1938.

Kenneth H. Davenport and Healey & Reynolds, for appellee.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellant.

MILLER, J.—Appellee, the Incorporated Town of Afton, owns and maintains a reservoir or pond for its use in connec-

tion with its water system, which reservoir covers an area of from three to five acres. The same is located about one-half mile west of the north side of Afton. Paved federal highway No. 34 is situated immediately south of the reservoir, and a railroad track is south of said highway. The real estate upon which the reservoir is situated is owned by the appellee town, and on May 20, 1936, no fence had been erected around the same. The pumping station connected therewith is located across the pavement south from the reservoir, and was in charge of one Elmo Gorman, an employee of the appellee town, whose duties consisted of reading light and water meters, pumping water, and general supervision. of the town's water-works. Sometime prior to May 20, 1936, Gorman caused a raft to be constructed for his use in going upon the reservoir and measuring the water at the end of a pipe. This raft was constructed of two bridge planks from two to two and a half inches thick, which were cleated together, with a small space between the two planks. When not in use, this raft was usually secured by driving a pole between the two planks into the mud close to the bank; although appellant testified that he had frequently seen it unsecured and loose upon the reservoir.

On May 20, 1936, at about 1 o'clock p. m., the decedent, Robert Lester Harriman, who was then between 13 and 14 years of age, together with his brother William, age 11 years; Billy Henderson, age 11 years, and Billy Porter, age 11 years, left the town of Afton for the purpose of riding on this raft. None of the boys, other than decedent, had ever ridden on this raft, or knew of its existence. The decedent informed them of the existence of the raft and all went upon his solicitation. The boys in leaving the town walked along the railroad track to the pump station, and then cut north across the pavement to the reservoir. They found the raft unsecured in the water, in the northeast corner of the reservoir. The boys located a couple of boards to use as oars. The Henderson boy and the Porter boy were scared and reluctant about getting on the raft, and decedent stated, "I will go out first and show you guys that she won't sink," whereupon he got on the raft and paddled the same to about the middle of the reservoir. He then came back and the Porter boy got on the raft with him, and these two paddled out in the reservoir some distance, and again came

back. Thereupon the Henderson boy got on the middle of the raft, with the decedent and the Porter boy at the two ends thereof. When the raft had proceeded about five yards from the shore the Henderson boy stepped toward decedent, causing that end of the raft to partly submerge, whereupon decedent said, ''The raft is going to sink, so I am going to jump,'' whereupon he jumped from the raft toward the shore, and was drowned. The town's employee, Gorman, was not at the reservoir at the time in question, and the only witnesses to the drowning were the three boys named. Appellant testified that prior to the day in question he had at different times seen small boys upon this raft, and that he had informed the mayor of appellee that he had seen children on the raft, and that he thought it was dangerous.

It is contended by appellant that even though his decedent may have been a technical trespasser, yet the maintenance of the pond or reservoir with the raft thereon by the appellee town, constituted the maintenance of an attractive nuisance, and that therefore the case should have been submitted to the jury for its determination.

Following the opinion in Sioux City & P. R. Co. v. Stout, 17 Wall (U. S.) 657, 21 L. Ed. 745, the attractive nuisance doctrine has given rise to a great divergence of judicial opinion; and, likewise, the various courts of last resort are not in harmony as to the underlying principle. Some of the courts treat the doctrine as an exception to the general rule of nonliability to trespassers, an exception born of necessity and applied out of consideration for the irresponsibility of infancy; while other courts invoke the doctrine only in cases where an invitation can be implied from the acts of the landowner, upon the theory that the temptation of an attractive plaything to a child of tender years is equivalent to an express invitation to an adult. An examination of our cases reveals that we are committed to the doctrine that the rule has its foundation in an implied invitation, that is, that the appliance in question, although its danger is apparent to those who have reached years of discretion, is so enticing or alluring to children of tender years, as to induce them to approach, get upon and use the appliance, and that this attractiveness amounts to an implied invitation to such children; and as a result of this implied invitation to enter upon the premises, or to use the dangerous instrumentality, children in

so doing are not trespassers but become invitees. In the case of Davis v. Malvern Light & Power Co., 186 Iowa 884, 173 N. W. 262, the following language is used (page 888 of 186 Iowa, page 263 of 173 N. W.):

"The theory upon which liability for injuries on account of so-called 'attractive agencies' or 'instrumentalities' rests, is that an implied invitation is thereby extended to children of tender years to go upon premises where the same are situated, and that they are likely to be injured thereby; that is, the implied invitation thus extended is equivalent to an express invitation to an adult. Gregory v. Woodworth, supra [93 Iowa 246, 61 N.W. 962]. * * * The writer of the opinion in Wilmes v. Chicago, G. W. R. Co. [175 Iowa 101, 156 N. W. 877, L. R. A. 1917F, 1024], said:

" 'All the cases of attractive nuisance seem to rest upon the thought that exposing anything of a character that appeals to children's nature, and, by appealing, draws them to it, is, in its very nature, an implied invitation to them to come. It is not material in an inquiry of this kind whether the children had been accustomed to come or not; whether it had remained a long time or a short time. The question is: Did the party charged expose to the public a thing of such an attractive nature that, as a reasonably prudent man, he should have known that it would draw children to it, and, having drawn them there, they were likely to be injured from the character of the instrumentality?' "

█ If, in the instant case, the attractive nuisance doctrine is not applicable, then it follows that appellant's decedent was plainly a trespasser, and as a trespasser the appellee town owed him no duty other than not to injure him wilfully or wantonly, and to use reasonable care, after his presence on the premises became known, to avoid injuring him, Davis v. Malvern Light & Power Co., supra; Gregory v. Woodworth, supra; Connell v. Keokuk R. Co., 131 Iowa 622, 109 N. W. 177; Brown v. Rockwell City Canning Co., 132 Iowa 631, 110 N. W. 12; Anderson v. Fort Dodge R. Co., 150 Iowa 465, 130 N. W. 391; Hart v. Mason City B. & T. Co., 154 Iowa 741, 135 N. W. 423, 38 L. R. A. (N. S.) 1173; Wilmes v. Chicago, G. W. R. Co., supra. There is no claim that the appellee town injured appellant's decedent wilfully or wan-

tonly, and, likewise, his presence upon the premises in question was not discovered by the town or officers until after his death.

In the case of Edgington v. Burlington R. Co., 116 Iowa 410, 90 N. W. 95, 57 L. R. A. 561, a young girl between the years of 7 and 8, was injured upon a turntable. In a very lengthy and enlightening opinion this court therein analyzed numerous cases wherein this doctrine was involved, and therein definitely established such doctrine as the law of this state. Following that opinion this court has continued to recognize this doctrine as the established law of this state. In the case of McKiddy v. Des Moines Electric Co., 202 Iowa 225, 206 N. W. 815, the opinion states that ever since the Edgington case we have recognized the attractive nuisance doctrine, therein citing a number of cases wherein the same had been involved. Therein we stated that from an examination of the prior cases involving this doctrine, that certain general rules appear to be definitely established as essential to the creation of liability for injury to a child who is, in the eyes of the law, a technical trespasser. Therein we stated that it must appear that the defendant knew, or was chargeable with knowledge, of the dangerous character of the instrumentality, and that the defendant's knowledge in that respect was superior to that of the child; that the character of the danger, whether open and obvious or hidden and latent, was an important consideration; that consideration should also be given to the kind and character of the instrumentality that caused the injury; that an important consideration was the location of the instrumentality that caused the injury as to whether the same was located near a public highway or other public place resorted to by children, and easily accessible, or whether located at a distant and more exclusive private place; and that the age and mental attainments of the injured child must be considered, further stating in connection therewith (pages 229 of 202 Iowa, page 817 of 206 N. W.) :

"No hard and fast rule of liability or nonliability can be fixed in this regard. It is a matter of common knowledge that children of very tender years know and appreciate the danger of exposed fire and of open water, while the same children may not appreciate the danger of machinery or other similar instrumentalities. In a large measure, each case must be determined in this respect, not alone by the age, but by the degree

of mentality and intelligence possessed by the child, as shown by the evidence, to observe and appreciate the particular danger.''

 The fact that an instrumentality is attractive to children is not in and of itself sufficient to place the same within the category of attractive nuisances. In addition to being attractive to children, the evidence must also establish that the instrumentality is a dangerous one. In the instant case, it is not contended that the maintenance of the pond or reservoir, in and of itself, constituted an attractive nuisance, but it is claimed by appellant that the maintenance of the pond or reservoir with the raft upon it constituted such an attractive nuisance. While the evidence is somewhat vague as to the exact size of the raft, it does establish that the same was constructed of two bridge planks somewhere between 15 and 24 feet in length, securely cleated together, and of a width of about 3 feet. The evidence establishes that this raft was apparently safe for the purposes for which it had been constructed; that is, for use by the caretaker in going out over the surface of the pond and measuring the depth of the water; and likewise establishes that the same had been successfully maneuvered with two grown men on the same. At the time of the unfortunate occurrence in question, the raft did not sink, and decedent's death was not caused by its sinking, but was caused by his jumping from the raft into the water. The remaining two boys were successful in bringing the raft to shore after the decedent had jumped therefrom. The evidence fails to reveal that this raft located upon the pond or reservoir in question constituted a dangerous instrumentality in any greater sense than any raft could be construed to be a dangerous instrumentality.

 The evidence also reveals that this pond or reservoir was not situated near any public place resorted to by children, nor near any public highway upon which children were wont to travel. While it is true that the same was located immediately adjacent to primary highway No. 34, yet the evidence reveals that the decedent and his companions were not attracted thereto on account of its proximity to this highway, but that on the day in question, the plan was concocted in the town of Afton, half a mile distant, to go to the reservoir and float the raft, and that in reaching the reservoir the boys traveled down the railroad

track instead of the highway, and then came across a lane used by workmen to the reservoir itself. The location of this reservoir, isolated as it was from any public place or playground, cannot be deemed to be so situated as |to be an invitation to children playing upon property adjoining or adjacent thereto.

This court has heretofore been confronted with the problem of the applicability of the doctrine of attractive nuisance to artificial ponds, pools, or reservoirs. Blough v. Chicago G. W. R. Co., 189 Iowa 1256, 179 N. W. 840; Raeside v. City of Sioux City, 209 Iowa 975, 229 N. W. 216; Massingham v. Illinois Cent. R. Co., 189 Iowa 1288, 179 N. W. 832. In these cases we recognize that a pond or reservoir is attractive to children, as are all bodies of water, but an examination of these cases reveals that we are definitely committed to the doctrine that such ponds, pools, or reservoirs, whether natural or artificial, in and of themselves do not come within the attractive nuisance doctrine. Raeside v. Sioux City, supra, and cases cited therein. As a result thereof we are squarely confronted with the proposition of whether or not the fact that the pond or reservoir in question had a raft on it, which in and of itself did not constitute a dangerous instrumentality to any greater extent than any raft, should be construed as an attractive nuisance. In the California case of Reardon v. Spring Valley Water Co., 68 Cal. App. 13, 228 Pac. 406, that court was confronted with a quite similar situation. There it had been the holding of the California court, as in Iowa, that an artificial pool or reservoir did not in and of itself constitute an attractive nuisance. Therein the defendant maintained a large artificial reservoir in a residential neighborhood, immediately surrounded by public streets and highways where children of tender years resorted for play; which reservoir was partly protected by a fence, that was inadequate to prevent children from entering the grounds on account of being dilapidated, and containing large holes. The defendant maintained on the reservoir a small rowboat which floated on the water, and was unsecured by any means. The five-year-old son of the plaintiff entered the grounds, and being attracted to the unsecured boat, boarded it, floated out upon the water, and fell from the boat and was drowned. There as in the instant case it was the claim of the plaintiff that the maintenance of this reservoir, with the inade-

quate fence and the rowboat thereon, constituted an attractive nuisance. The California court, in its opinion, uses the following language (page 408):

"In the light of the precedents binding upon this court, there is only one possible theory upon which appellant can recover, and that is that the single additional feature of an unsecured floating boat entirely removes the case from the application of the settled rule in California. To take respondent's striking presentation of the matter: If a child of the age of appellant's son, while trespassing on private property, is attracted to an artificial pond and falls in and drowns, there is no liability; if the same child, attracted to the same pond for the purpose of fishing, loses his balance and falls into the water and is drowned, there is no liability; if the child, while swimming in the pond, is drowned, there is no liability; if he constructs a raft and uses it upon said pond and falls from it, and is drowned, there is no liability under the authority of the California cases cited therein. Can it be that if he falls from a rowboat left upon the water by the owner of the property and is drowned, a different legal principle is involved? We think there is no reason for a different rule in the instance last mentioned."

Is seems to us that the application of the above statement from the California court is applicable to the instant case in accordance with our previous pronouncements. If the decedent herein had been attracted to the reservoir for the purpose of fishing, had lost his balance and was drowned, there would have been no liability; or if, while swimming therein, he was drowned, there would have been no liability. We are likewise constrained to the view that on account of the fact that the appellee town permitted a raft to remain upon the water in question, does not permit the invoking of a different rule.

In the case of Robbins v. City of Omaha, 100 Nebr. 439, 160 N. W. 749, the defendant city owned a large tract of land, part of which was known as Elmwood Park. A part of said land was improved, and a part undeveloped for park purposes. Upon the undeveloped portion was constructed an artificial pond upon which the defendant suffered and permitted a raft to remain. The artificial pond with the raft thereon was maintained in an obscure part of the land without any protection against accidents to children, and without any life-saving devices or means of

calling for rescue. Plaintiff's decedent, a boy of nine years of age, went upon the raft and while playing thereon fell from the raft into the deep water, and drowned. Plaintiff in his petition alleged that these facts constituted an attractive nuisance, to which petition a demurrer was sustained, and the court therein uses the following language (page 750):

"It is argued that, because the pond was six feet deep, was unguarded, had a raft thereon, and a child might fall therein and be drowned, it is a nuisance, while it is admitted that a shallow body of water, which a child might wade across, would not be a nuisance. We do not care to fix the depth at which water may be maintained in lakes formed and maintained in public parks. If this is to be done, it ought to be done by legislative enactment. It is a question that falls naturally to the legislative department of the government, and not to the judicial. A lake in a park, whether artificially formed or not, is not of itself a nuisance. Parks are maintained for the benefit of the public, and a pond, or lake, adds to the beauty of the park and increases its attractiveness. Although this is an artificial body of water, it did not differ in its essential qualities from a natural body of water. The accident which occurred is one that might happen upon a lake formed by nature, or upon a river front. This artificial lake, even with the raft thereon, was no more dangerous than the Missouri river front, where boys of all ages congregate. It is common knowledge that boys, even of tender years, indulge in athletic sports. They play upon rafts, boats, and floating logs, climb trees, and expose themselves to innumerable dangers. It is part of a boy's nature to indulge in these venturesome sports, and a city can be no more held for negligence in maintaining this artificial pond, unfenced and unguarded, with the raft thereon, than it could for leaving the river front exposed. The possibility of a child being drowned in this pond was as patent to the parents as to the city. The path of the child is always beset with danger, and this pond is one of those dangers to which childhood has ever been exposed. From the facts stated in the petition it does not appear that the pond and raft constituted an attractive nuisance.

"The demurrer was properly sustained, and the judgment is affirmed."

In the instant case, as in the California and Nebraska cases, there were no unknown, hidden, or concealed dangers, but the dangers connected therewith were open and obvious. The doctrine of attractive nuisance applies to children of tender years, that is, to children of such tender years that they are incapable of realizing and appreciating the dangers incidental to and connected with the instrumentalities to which they have been attracted. The instant case reveals that the decedent was between 13 and 14 years of age; was of the average mentality of a boy of that age, and that he was cognizant of the danger of water and the danger of drowning. He had been warned by his mother not to go close to water. He was the originator of the plan to go to the reservoir, which plan he and the other boys concealed from their parents. This was carefully planned, as is revealed by the fact that the boys did not proceed down the highway, but down the railroad track, for the express purpose of avoiding detection. In addition thereto, upon arrival at the reservoir his companions at first declined his invitation to go upon the raft with him, for the reason that they were afraid the same was not safe, and it was only after coaxing and demonstration upon his part that they did consent to go upon the raft. This situation of the evidence reveals that the decedent was cognizant of and did appreciate the dangers incidental to the raft and body of water.

In two early turntable cases before this court, Merryman v. Chicago, R. I. & P. R. Co., 85 Iowa 634, 52 N. W. 545; Carson v. Chicago, R. I. & P. R. Co., 96 Iowa 583, 65 N. W. 831, the injured boys were of the ages of 13 and 12 years respectively, and in each of those cases recovery was denied upon the ground that they appreciated and were cognizant of the danger involved in operating the turntables, and were therefore guilty of contributory negligence. In the case of Anderson v. Ft. Dodge Ry. Co., supra, the plaintiff was in the 13th year, and this court in commenting thereon states as follows (page 469 of 150 Iowa, page 392 of 130 N. W.) :

''The plaintiff in this case was in his thirteenth year, and while it would perhaps be too much to say that we can assume as a matter of law that a boy of such age is sufficiently mature to be chargeable with contributory negligence, his evidence clearly discloses that he appreciated the fact that he was a

trespasser, and that he would be ordered away if discovered. It shows, also, that he knew the railroad was operated by electric power, and knew the dangerous character of wires charged with electricity.''

In the instant case plaintiff's decedent was likewise in his thirteenth year, and while perhaps it would be too much to say here that we can assume as a matter of law that a boy of such age is sufficiently mature to be chargeable with contributory negligence, yet the undisputed evidence reveals that decedent did appreciate and know that he was engaging in an enterprise that had been forbidden by his parents, and that he knew that the operation of the raft upon the pond or reservoir in question was fraught with the possible danger of drowning. The adoption of the contention of appellant herein would result in the extension of the attractive nuisance doctrine in this state to include therein an instrumentality in which the danger connected therewith was open and obvious and fully appreciated by the injured child. This court has always been reluctant to extend the doctrine of attractive nuisance. Smith v. Iowa City, 213 Iowa 391, 239 N. W. 29; Davis v. Malvern Light & Power Co., supra.

In harmony with the conclusions we have reached, it follows that the doctrine of attractive nuisance is not applicable in the instant case, and that the trial court did not err in directing a verdict for appellee. This disposition of the matter avoids the necessity of passing upon the claim of appellee that it was engaged in a governmental function and therefore immune from liability.

Appellee's motion to dismiss, which was submitted with the case, is overruled.—Affirmed.

SAGER, C. J., and all Justices concur.