38 N.J. Super. 222 (1955)
118 A.2d 714
JOSEPH HOFF, JR., AN INFANT, BY HIS GUARDIAN AD LITEM, JOSEPH HOFF, AND JOSEPH HOFF, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
NATURAL REFINING PRODUCTS CO., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1955.
Decided November 9, 1955.
*223 Before Judges GOLDMANN, FREUND and CONFORD.
*224 Mr. Francis Sorin argued the cause for plaintiffs-appellants.
Mr. William T. McElroy argued the cause for defendant-respondent (Messrs. Shaw, Hughes & Pindar, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
In recent years the Supreme Court has placed this State in the considerable and growing company of jurisdictions which have accepted section 339 of the Restatement of Torts as the basis for the liability of a possessor of land for bodily harm sustained thereon by child trespassers. Strang v. South Jersey Broadcasting Co., 9 N.J. 38 (1952); Harris v. Mentes-Williams Co., Inc., 11 N.J. 559 (1953); and see McGill v. United States, 200 F.2d 873 (3rd Cir. 1953); Prosser, Law of Torts (2d ed. 1955) § 76, pp. 439, 440; Note, The Attractive Nuisance Doctrine  Its Status in New Jersey, 8 Rutgers L. Rev. 378 (1954). This advance has not been without overtones of concern. See the dissent in the Harris case, supra (11 N.J., at pp. 563, 564); the Note cited supra (8 Rutgers L. Rev., at pp. 385, 387); and Ireton, Torts [in New Jersey 1952-1953], 8 Rutgers L. Rev. 181, 183 (1953). The appeal before us involves the application of the rule to a boy of 13 1/2 and the admeasurement of the respective spheres of responsibility of trial judge and jury.
On March 6, 1953 plaintiff, aged 13 years and almost 8 months and an eighth grade elementary school student, "played hookey" from school with a companion and decided to go to play on what was known as "the chemical hill" at Halladay Street in Jersey City. This appears from the testimony and a photograph in evidence to consist of a huge mound of chemical refuse accumulated on property of the defendant over the years as a by-product of its nearby chemical manufacturing operations. The pile was some 50 feet high and seems to have had the general aspect and contour of a hilly ridge. It is in an urban, mixed industrial and residential area, bordered by city streets. Testimony elicited *225 from the plaintiff on cross-examination indicates that defendant's workmen dump refuse on the mound or pile by running hand cars on rails from across the street up onto the pile and that plaintiff saw such operations in progress on the day of the incident here involved. Plaintiff and other boys had been accustomed to climb and play on the pile frequently for years past. He said that at times as many as 15 boys would be playing there at one time. He was never warned away by signs or verbal direction of any one. There was no fence or other obstruction to free access.
On the day mentioned the two boys climbed to the top, partly with the aid of foot-holes previously notched in the hill, and played on the top for about an hour. Deciding to descend, the other boy went down first, and the plaintiff, standing three feet from the edge of the top ledge, was suddenly precipitated to the ground when the ledge caved in. This action is to recover damages for the injuries consequently sustained, including a broken leg.
The following is the only testimony bearing directly on plaintiff's knowledge concerning the consistency of the contents of the pile or mound. It was given on cross-examination:
"Q. Joe, I think you said to Mr. Sorin before that while you were on the ledge just before you fell there were two workmen who were unloading a hand car with refuse in it; is that right? A. Yes, sir.
Q. And that's loose refuse, isn't it? A. Yes, sir.
Q. That is what the whole pile consists of, doesn't it, refuse from the plant? A. Yes, sir.
Q. You know it's loose stuff, don't you? A. Pardon, but it's not all loose.
Q. Some of it is loose? A. Some of it, yes.
Q. You knew that the men are constantly putting refuse on top and taking it off and working round there in general, didn't you? A. I guess I didn't realize it, sir.
The Court: The question is did you, not whether you realize it. Did you?

* * * * * * * *
The Witness: Well, sir, I knew they were working around there in general but not shifting the piles.
*226 By Mr. Pindar:
Q. You knew part of the pile, at least, was composed of loose material, isn't that so? A. Part of it, yes, sir.
Q. You knew that before you climbed up there, didn't you? A. Yes, sir."
At the time of the trial, 27 1/2 months after the accident, plaintiff was one month short of 16 years of age. Before the date of the accident his school grades had been "good." He was an "average" student and he graduated from elementary school the following June. For some unexplained reason, however, he was only finishing his first year at high school at the time of the trial.
After conclusion of the plaintiffs' case the trial judge granted a motion to dismiss. He said the Strang case, supra, was not applicable as
"The plaintiff in question is not a child of such tender years but was at the time of the happening of the accident thirteen years and eight months of age. The question of contributory negligence of the infant is not involved in my ruling. * * * The duty of a possessor of land to trespassing children does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them. In this case the infant plaintiff was of sufficient age and understanding to fully appreciate the dangers inherent in his climbing up and down the pile of chemical waste material in question. Certainly, this boy was at least of average intelligence, if not more, as manifested, for his thirteen years and eight months of age. * * * I am satisfied from the proofs presented and all the favorable inferences that could be taken therefrom in favor of the plaintiffs, against whom this motion is made, that the proofs do not establish the breach of any duty which it is alleged the defendant owed to the infant plaintiff in this particular case, particularly to protect a child of immature age from his own acts of indiscretion."
While the case before us appears to narrow to the question of the age and capacity for appreciation of the danger of the particular child, analysis of the problem will reveal the close relevance of the nature of the causative condition. In view thereof, it will be useful at the outset to set forth the entirety of the text of section 339 of the Restatement:
*227 "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."
The underlying common-law rationale of the principle had this exposition by the Supreme Court in the Strang case, supra (9 N.J., at p. 45):
"Here, the presence of the child upon the land should have been anticipated, and from this derives the duty of care and protection. The basis of liability is the foreseeability of harm, and the measure of duty is care in proportion to the foreseeable risk. An act in disregard of this obligation is a remediable misfeasance. * * * These exceptions at common law to the general rule of nonliability to trespassers proceed from humanitarian considerations and reasons of social policy. Parents cannot be with their children always. The doctrine represents a prudent and essential accommodation of the landowner's right to the use of his land and society's interest in the humane and the protection of the life and limb of its youth and the individual's interest in personal security. The correlative burden on the landowner, small in comparison to the larger interests to be served, is a necessary concession to the common welfare. Or, as it is put in the Restatement, the inquiry is whether the utility to the possessor of maintaining the condition is slight as compared with the risk to the children involved. Human safety is of far greater concern than unrestricted freedom in the use of land. Restatement of Torts, section 339. Vide Prosser on Torts, 613, 624; 21 Michigan Law Review, 495. The particular relation gives rise to a legal duty commensurate with the demands of reasonable foresight for harm."
In the Harris case, supra, it was pointed out that the holding of the Strang case "was that the use of a dangerous instrumentality gave rise to a foreseeable risk of harm," whereas in the case then at hand "the condition of the land as changed by the defendant gave rise to the foreseeable *228 risk of harm." (11 N.J., at p. 562). In the present case there is also an obvious change of the condition of the land. As to its foreseeable capacity for harm to the plaintiff, see infra.
A "grave doubt," expressed by the trial judge in his remarks in dismissing the action, as to whether the defendant had "knowledge, actual or constructive, of the playing of children in and about the chemical pile" leads us at once to state our conclusion that this was unquestionably a jury issue. The only proof on the point before the court was that plaintiff and other boys had played there for years, at periods as often as several times a week, and that there were generally workmen in the vicinity who never warned the boys or chased them away.
In any case, the ground of decision at the trial level and the main contention of the respondent here is that the duty of the defendant under the concededly applicable Restatement principle was non-existent in so far as plaintiff was concerned either because he was not a "young child" within the contemplation of the rule, or that he was sufficiently mature to "realize the risk involved" in playing on the hill (§ 339(c)). The Strang and Harris cases, supra, are not direct precedents as they involve six-year-old children. An examination of the decided cases in those jurisdictions which purportedly adhere either to the Restatement rule or to the older, cognate "attractive nuisance" or "infant trespasser" doctrine reveals a sharp contrariety of viewpoint as to this type of problem and the focal point of the controversy is the 13- to 15-year age bracket. Given the required conditions of actual or constructive knowledge by the landowner of the likelihood of the intrusion of children and of the dangerousness of the particular instrumentality or land-condition, the determination of the propriety of submission of the case to a jury is generally rested, expressly or tacitly, on whether the combined and interrelated factors of (a) degree of maturity of the child and (b) latency, or per contra, obviousness of the hazard, raise a question on which fair-minded men could reasonably differ as to the critical conclusion of discovery of *229 the dangerous condition or realization of the risk by the particular infant plaintiff. A fair cross-sampling of the cases, classified on an age basis, follows:
Issue for jury, 13 years: Pierce v. United Gas & Electric Co., 161 Cal. 176, 118 P. 700 (Sup. Ct. 1911); McKiddy v. Des Moines Electric Co., 202 Iowa 225, 206 N.W. 815 (Sup. Ct. 1926); Buckeye Irr. Co. v. Askren, 45 Ariz. 566, 46 P.2d 1068 (Sup. Ct. 1935); Edwards v. Kansas City, 104 Kan. 684, 180 P. 271 (Sup. Ct. 1919); Smith v. Evans, 178 Kan. 259, 284 P.2d 1065 (Sup. Ct. 1955); Gillespie v. Sanitary Dist. of Chicago, 315 Ill. App. 405, 43 N.E.2d 141 (App. Ct. 1942).
Issue for court, 13 years: Peters v. Town of Ruston, 167 So. 491 (La. Ct. App. 1936); Briscoe v. Henderson Lighting & Power Co., 148 N.C. 396, 62 S.E. 600, 19 L.R.A., N.S., 1116 (Sup. Ct. 1908); Harriman v. Incorporated Town of Afton, 225 Iowa 659, 281 N.W. 183 (Sup. Ct. 1938); Jennings v. Glen Alden Coal Co., 369 Pa. 532, 87 A.2d 206 (Sup. Ct. 1952).
Issue for jury, 14 years: Patterson v. Palley Mfg. Co., 360 Pa. 259, 61 A.2d 861 (Sup. Ct. 1948); Cicero State Bank v. Dolese & Shepard Co., 298 Ill. App. 290, 18 N.E.2d 574 (App. Ct. 1939); Biggs v. Consolidated Barb-Wire Co., 60 Kan. 217, 56 P. 4, 44 L.R.A. 655 (Sup. Ct. 1899); McCoy v. Texas Power & Light Co., 239 S.W. 1105 (Tex. Com. of App. and Sup. Ct. 1922).
Issue for court, 14 years: Louisville & N.R. Co. v. Hutton, 220 Ky. 277, 295 S.W. 175, 53 A.L.R. 1328 (Ct. App. 1927); Payne v. Utah-Idaho Sugar Co., 62 Utah 598, 221 P. 568 (Sup. Ct. 1923); Giddings v. Superior Oil Co., 106 Cal. App.2d 607, 235 P.2d 843 (D. Ct. App. 1951); Keck v. Woodring, 201 Okl. 665, 208 P.2d 1133 (Sup. Ct. 1948).
Issue for jury, 15 years: Ekdahl v. Minnesota Utilities Co., 203 Minn. 374, 281 N.W. 517 (Sup. Ct. 1938); Johns v. Fort Worth Power & Light Co., 30 S.W.2d 549 (Tex. Ct. Civ. App. 1930).
Issue for court, 15 years: Central of Georgia R. Co. v. Robins, 209 Ala. 6, 95 So. 367, 36 A.L.R. 10 (Sup. Ct. *230 1923); Shaw v. Chicago & A.R. Co., 184 S.W. 1151 (Mo. Sup. Ct. 1916); Abbott v. Alabama Power Co., 214 Ala. 281, 107 So. 811 (Sup. Ct. 1926).
Perhaps an extreme was reached in Schorr v. Minnesota Utilities Co., 203 Minn. 384, 281 N.W. 523 (Sup. Ct. 1938), where recovery was allowed a 16-year-old boy electrocuted while playing with a wire cable. The case involved the same accident and court as did the Ekdahl case, supra, and recovery was rested on the same basis as the court applied there in favor of a 15-year-old. In the latter case the court had said (281 N.W., at p. 521):
"* * * This doctrine of attractive nuisance has excused the technical trespass of children or youths of about the same age as Warren * * *. We do not believe courts should set the age limit at which, as a matter of law, an attractive nuisance ceases to allure a youth. It depends a great deal upon what the contrivance is, where located and the development and understanding of the youth or child involved."
For a useful commentary on the Ekdahl and Schorr cases see Case Note, 23 Minn. L. Rev. 241 (1939); cf. Klingensmith v. Scioto Valley Traction Co., 18 Ohio App. 290 (Ct. App. 1924), allowing recovery to a 16-year-old boy killed by a disruptive charge from a high-voltage transmission line, who climbed a tower, made easy to climb by steel lattice work, and situated on a public street where children and minors congregated to play. As to an 18-year-old girl, see Tahan v. Wagaraw Holding Co., 28 N.J. Super. 436, 446 (App. Div. 1953).
Prosser's newest text (op. cit., supra, § 76, at pp. 443, 444) expresses the observation that while "in practice it is seldom that children above the age of twelve have been protected" (Professor James puts it at "over fourteen"; see next paragraph, infra), nevertheless, "in view of the variety of conditions to be encountered, and the inability of even adolescents to appreciate fully some kinds of latent danger, most courts have agreed that it is undesirable to set any fixed limit * * *."
*231 Professor James treats the age problem, in terms of the framework of the Restatement rule, as follows: (James, Tort Liability of Occupiers of Land: Duties Owed to Trespassers, 63 Yale L.J. 144, 166-169 (1953)):
"Thirdly, the condition must be one which is likely to cause serious injury or death to a child in a way which he is not likely to appreciate and avoid. This double-barrelled requirement bears on the likelihood of harm and the gravity of the harm if it happens. The age of the child will affect the likelihood that he will encounter danger and his ability to appreciate and avoid it. The older the child, the less the danger that many conditions will have for him. Consequently, the age of foreseeable trespassers is decidedly a factor in determining the negligence of the landowner. But even adults are likely to encounter some dangers (while trespassing but acting carefully) such as concealed high-tension wires. No hard and fast rule as to age should therefore be drawn. There has been a tendency, however, to confine the present doctrine to very young children; seldom has recovery been granted to a child over fourteen. This may be, in part, a confusion of the issues of duty and contributory negligence; in part, a hangover from the now generally discredited requirement of allurement.

* * * * * * * *
The inability of trespassing children to appreciate the danger has great bearing on the issue of negligence. People usually avoid obvious and appreciated dangers, and others may reasonably assume that they will. Surely, it would be an intolerable burden to require a landowner `to guard every stairway, cellarway, retaining wall, shed, tree and open window on his premises, so that a child cannot climb to a precipitous place and fall off.' Yet some dangers may be so great and so likely to be encountered, inadvertently perhaps, that it is not reasonable to assume that the knowing child will avoid them."
The list of out-of-state citations set forth above is not intended to suggest that this field of liability is susceptible of facile categorization by age. To the contrary. For example, most of the cases dealing with the drowning of trespassing child swimmers deny liability, even at ages below that of the instant plaintiff, partly on the basis of the obviousness of the danger to almost any child. This consideration played a part in the Peters, Jennings and Harriman cases, supra; per contra, the Smith case, supra. But where there is injury from a latent water hazard, there is recovery. Cicero State Bank v. Dolese & Shepard Co., supra. For an annotation *232 of all the drowning cases see 8 A.L.R.2d 1254. On the other hand, there is a strong tendency to allow recovery, even to older children and youths, in the electric wire cases, notwithstanding self-exposure by the dangerous expedient of climbing poles. The ratio decidendi is the extreme deadliness of the unprotected hazard. See the Pierce, McKiddy, Ekdahl, McCoy and Johns cases, supra; also Annotation, 6 A.L.R.2d 754.
Where the evidence showed affirmatively and without contradiction that a 13 1/2-year-old boy was cognizant of the hazard in trespassing on a raft, the issue was for the court. Harriman v. Incorporated Town of Afton, supra; so, too, as to a 14-year-old boy, in Giddings v. Superior Oil Co., supra. On the other hand, aside from the Briscoe case, supra, and the "drowning-while-swimming" cases, we find no decisions in any jurisdictions applying some form of the infant-trespasser rule, wherein it was squarely held that a normal boy of less than 14 was as a matter of law beyond the pale of recovery because old enough to be classified as an adult trespasser. The plethora of child-trespasser cases is such that we cannot be certain that some such decision has not escaped our notice, but if there are any, we are confident they represent a rare point of view. To the extent that the ruling of the trial judge in the case before us is understandable as a holding that a boy of 13 years and 8 months of average intelligence and capacity is, as a matter of law, not within the protection of the rule of section 339 of the Restatement, we are in emphatic disagreement. In our judgment the average lad of that age is still a child in most of the aspects which have relevance under the Restatement rule and its implications in social policy. While he may be expected, some time within the two-year period next succeeding, to experience rapid maturation physically and almost overnight transformation socially and psychologically, he is still, at the indicated age, adventuresome, heedless of his safety, and substantially oblivious of any part of his physical environment not directly the object of his play or activity of the moment. In short, as any one with the responsibility of supervising or caring *233 for a 13-year-old boy well knows, unless he is extraordinary he is decidedly immature so far as his capacity for appreciation of hazard and exercise of good judgment in respect to personal safety is concerned. Even as to the 14- and 15-year-old boys involved in the McCoy and Johns cases, supra, the Texas courts referred to them in terms of the rule applicable to "children of immature years" and to a "boy of immature age." As was stated in the dissenting opinion of Justice Musmanno of the Pennsylvania Supreme Court in Jennings v. Glen Alden Coal Co., supra in reference to a 13 1/2-year-old boy drowned while swimming in an excavation under circumstances suspicious of an underwater impediment (87 A.2d, at p. 212):
"The spontaneity of children in responding to invitation to play, without calculating the risk, is as well known as the sequence of the seasons or the regularity with which night follows day. It is not an imponderable, or a matter of speculation. It is simply fact."
An examination of section 339 of the Restatement of Torts indicates it is part of a comprehensive scheme for formulation of the degree of liability of landowners for bodily injury to any trespasser, sui juris or not, comprised of sections 333 to 339, inclusive. Section 333 states the hypothesis that the possessor of land does not owe a trespasser the duty of reasonable care except as stated in sections 334 to 339. Sections 334 to 338 impose a gradation of liability to trespassers, whether or not children, dependent on the kind of activity or condition maintained, the extent of the area of danger known to be the subject of trespass, and the nature of the landowner's warning to such trespassers. In this progression there is but a slight, yet appreciable, expansion of the degree of liability by section 339 in favor of "young children." The gradual merging of the area of liability to trespassers generally into that of liability to children, under both the Restatement and the common law antecedents thereof, was noticed by the Supreme Court in the Strang case, supra (9 N.J., at pp. 44, 45). The transition from the general to the particular was described thusly:
*234 "And the general rule of liability covers in particular trespassing children of tender years who because of immaturity are wanting in the discretion and judgment essential to their own security." (Emphasis supplied.) (at p. 45)
The rule of law under discussion cannot, in our judgment, adequately serve the social function which rationalizes its broad scope unless it is applied realistically. If the justification for expanding the liability of the possessor of land as to trespassing children is founded on the "immaturity" of children and their consequent want of the "discretion and judgment essential to their own security," there is no place for the assumption in law that any particular child, in the absence of conclusive evidence thereof, has shed his immaturity at any particular age. In this domain the law may wisely find its guide in the general sense of mankind. Nor should there intrude the notion that at any given age the child "should know better." We are here necessarily dealing in pragmatics, not theories of improvement of child behavior. Close curtailment of liability by law will not dull the instinct of the child for carefree play. But the fair application of the rule of liability on a realistic basis will encourage the adoption of safety measures by industrial and other land occupiers and subserve the intent of the rule that the risk of foreseeable injuries to children be borne by those best able on the whole to prevent them. See Green, Landowners' Responsibility to Children, 27 Texas L. Rev. 1, 12, 13 (1948).
The irrationality of selecting an age for a conclusive presumption concerning a child's capacity or incapacity to understand and appreciate dangers, except as to an age completely beyond reasonable disagreement, was stated by the Supreme Court in Dillman v. Mitchell, 13 N.J. 412, 415 (1953), as follows:
"* * * The age of a child does not alone determine its capacity to care for itself and avoid dangers, and the law should not arbitrarily fix an age at which the duty to exercise some care begins. If reasonable men might differ as to the capabilities of an infant to understand, appreciate and avoid dangers to which he is exposed, then whether or not he was guilty of contributory negligence in the circumstances becomes a jury question. * * *"
*235 The logical application of the foregoing to the question here under consideration is not impaired by the circumstance that the court was there holding that there is no conclusive presumption that a child under seven is incapable of contributory negligence. The essential consideration is that we should not "enforce an iron-clad rule, which is contrary to fact." (13 N.J., at p. 416).
We are thus brought to the alternative question as to whether the state of the evidence on the plaintiffs' case justified the trial judge's conclusion as a matter of law that the particular child here involved did "fully appreciate the dangers" of playing on this hill or pile, apart from any matter of presumption arising alone from his age. This inquiry precipitates three subordinate questions, two of fact and one of law: (a) as to capacity or awareness of the child; (b) as to the ostensible condition of the hill in relation to the production of the injury; and (c) as to appropriate functions of court and jury.
We find nothing in the evidence to indicate this boy to have been significantly more or less advanced in capacity, understanding or maturity than the average child of his age. His school grades were "good" and he was an "average" student. The facts that he was on the hill at all rather than at school and that he spent an hour "fooling around on the top, having dirt bomb fights and everything" are not persuasively indicative of maturity beyond his years.
As to the apparency or latency of the condition which led to the crumbling of the ledge on which the plaintiff was standing there is evidence leading in both directions. While the pile was apparently being constantly added to by loose refuse, to the knowledge of the boy, nevertheless a jury could well find that this mound had been growing by accretion for years and that much of it was substantially solid through settlement or other natural processes. There was direct evidence that it was firm enough for workmen to transport metal hand cars loaded with refuse to its top upon tracks for purposes of dumping. Large groups of boys had played on its top simultaneously. There was no indication of any previous *236 cave-in. The sides of the hill were crevassed with more or less permanent "foot-holes." A disqualifying awareness of the danger in climbing or from being on a height cannot be educed as a matter of law. "That children will accept a situational invitation to climb is a matter of common knowledge." Bartleson v. Glen Alden Coal Co., 361 Pa. 519, 64 A.2d 846, 851 (Sup. Ct. 1949); Gillespie v. Sanitary Dist. of Chicago, supra (43 N.E.2d, at pp. 145, 146). While plaintiff said he knew that "a part of the pile," at least, was composed of loose material, there was no indication that the top, where he had been playing and standing, was any less stable or solid than the places where the workmen were dumping material from hand cars. We are clear that the question as to whether plaintiff actually realized the risk of the injury he sustained was purely one of fact. We think the issue was eminently one for the jury.
There has been a pronounced tendency on the part of many courts to equate the factor of appreciation of the risk or danger by the child plaintiff in this kind of case with the defense of contributory negligence. See the Patterson (61 A.2d, at p. 865), Biggs (56 P., at p. 6), Ekdahl (281 N.W., at p. 520), Louisville & N.R. Co. (295 S.W., at p. 177) and Gillespie (43 N.E.2d, at p. 144) cases, all supra. While it is comprehensible that, conceptually, these are separate and distinct considerations, the first going to the existence of the duty from the defendant to the particular plaintiff and the other to a defense, assuming the existence of a primary duty, James, op. cit., supra (63 Yale L.J., at p. 167, fn. 142), it is obvious that the capacity of a particular child to perceive and appreciate the risk in a specific situation is an integral component of the concept of contributory negligence. Decided cases in this jurisdiction and others are illustrative and serve, at the same time, analogously to sustain the view that the issue of realization of risk should be submitted to the jury whenever there is a debatable question thereof on the evidence. In Tomaszewski v. Schactman, 113 N.J.L. 579, 580 (E. & A. 1934), involving the death of a 13-year-old boy by automobile, the denial of a nonsuit was sustained, the court *237 saying: "We think the nonsuit was properly denied. The conduct of a boy thirteen years of age is not to be gauged by the standards exacted of an adult." Dealing with a similar question in respect to a 14-year-old boy, the court, in Dobrzynski v. Liveright, 118 N.J.L. 589, 591 (E. & A. 1937), in reversing a nonsuit granted on the basis of contributory negligence, quoted from Nichols v. Grunstein, 105 N.J.L. 363 (E. & A. 1929), to the following effect:
"Between the time in life when a person is incapable of exercising the care and judgment necessary to avoid and avert danger, and the time when such person is in law an adult and responsible as such, there is a transition period during which responsibility depends on matters of fact, and in this transition period such person may or may not be guilty of contributory negligence.
The degree of care required of a child old enough to be capable of negligence is such as is usually exercised by persons of similar age, judgment, and experience. In order to determine whether such a child has been guilty of contributory negligence, it is necessary to take into consideration the age of the child, and its experience and capacity to understand and avoid danger to which it is exposed in the actual circumstances and situation under investigation, and it is usually a question for a jury to determine whether the child has been guilty of contributory negligence."
Once a doctrine of the scope of Restatement, section 339 (or any other) is accepted by a jurisdiction, it should be applied in a trial at law in the same way as would any other rule, with the determination of disputed facts or inferences therefrom delegated to the jury. Caution as to the extent to which a rule should go in matter of law would not justify the interposition of a drag on the operation of the rule by untoward entry by the trial judge into the fact-finding field, and we are confident there was no intention toward that end by the trial judge in this case. Cf. Green, op. cit. supra (27 Texas L. Rev., at p. 12). Here, as in the negligence field generally, the trial bench is governed by the rule that on a motion for judgment by the defendant the court cannot weigh the evidence but must accept as true all evidence which supports the view of the plaintiff and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor  in short, that if fair-minded men might *238 honestly differ as to the conclusions to be drawn from the proofs, the questions at issue should be submitted to the jury. Rapp v. Public Service Coordinated Transport, 9 N.J. 11, 17 (1952); Mellon v. Pennsylvania-Reading Seashore Lines, 7 N.J. 415, 419, 420 (1951).
We have already indicated the respects in which we have deemed there were open questions of fact or inference here. Superimposed was the circumstance that the appearance of the plaintiff at the trial, when he was almost 16, must have almost completely masked the appearance and mental capacity of the boy as of the accident date. This could only have complicated the already inherently close questions of fact as to capacity and emphasized the appropriateness of their submission to the jury.
We find exemplary the statement of the Pennsylvania Supreme Court in Patterson v. Palley Mfg. Co., supra, involving a fatal injury to a 14-year-old trespasser upon whom fell a wall in process of demolition, notwithstanding it is couched in terms of contributory negligence (61 A.2d, at p. 865):
"Defendant would have had the court declare young Patterson guilty of contributory negligence as a matter of law because of the fact that he was almost 14 years of age. It is true that the legal presumption of a child's incapacity to appreciate and avoid injury may reach a point close to that age when it becomes almost a negligible quantity, and in such cases, if the facts are settled and there can be no reasonable doubt as to the inference to be drawn, the question of contributory negligence may be determined by the court as a matter of law * * *. Generally speaking, however, the care and caution required of a child is measured by his capacity to see and appreciate danger, and he is held only to such measure of discretion as is usual in those of his age and experience; this being necessarily a varying standard, the question is ordinarily one for the jury and not for the court: * * *" (Emphasis supplied.)
And see Biggs v. Consolidated Barb-Wire Co., supra (56 P., at p. 6).
No question is raised concerning the dangerousness to children of the artificial condition created by defendant on its land. We deem it clear there was a question of fact *239 presented as to this. But we do not have here the situation of an obviously dangerous apparatus recklessly meddled with "in a spirit of bravado" which is distinguished in the Restatement commentary on section 339. Comment (b) on clause (a), p. 922 of Restatement, Law of Torts (1934).
Reversed and remanded for a new trial, costs to abide the event.