EDWARD STRANG, AN INFANT, BY HIS GUARDIAN AD LITEM, ERNEST W. STRANG, AND ERNEST W. STRANG, IN HIS OWN RIGHT, PLAINTIFFS-RESPONDENTS, v. SOUTH JERSEY BROADCASTING COMPANY, A BODY CORPORATE, DEFENDANT-APPELLANT.

Argued September 10, 1951—Reargued January 21, 1952—Decided March 3, 1952.

*Mr. Sidney P. McCord, Jr.*, argued the cause for appellant (*Messrs. Starr, Summerill & Davis,* attorneys).

*Mr. Gene R. Mariano* argued the cause for respondents.

The opinion of the court was delivered by

HEHER, J. The question here is whether the defendant landowner in possession is liable in tort for negligence for injuries sustained by plaintiffs in these circumstances:

■ On January 15, 1949, the infant plaintiff, then one month less than six years of age, entered unfenced lands on Mt. Ephraim Avenue near the intersection with Olympia Road in Camden, owned and maintained by defendant for the operation of its radio station WKDN, and suffered severe burns when his clothing was inflamed by a fire set by defendant's janitor to consume waste paper and other combustible matter gathered in defendant's administration building situate about 30 feet away. Five or ten minutes after kindling the fire, the janitor returned to the building, leaving the fire unattended, and remained there, performing other duties, until he heard the infant plaintiff's cries of anguish some 15 minutes later. He found the child on the ground at the "still smoldering" fire, his clothing aflame. The fire was small in area, about two feet in diameter; the burning materials were not confined within an incinerator or other receptacle. And the janitor had not been provided with fire-extinguishing equipment. The locus comprised approximately 30 acres in a "heavily travelled," "built-up" and "thickly populated" area containing also "a lot of stores and miscellaneous business establishments." Besides the administration building, itself a small structure, defendant maintained a radio antenna tower on the tract, both constructed four or five months prior to the day of the mishap. There was no other building or structure on the land. Plaintiffs' residence was at 1632 Olympia Road, facing defendant's lands, not far from the radio tower and administration building. The tract had been entirely vacant prior to

the erection of these structures. There was no posted notice identifying the ownership or forbidding the long-standing use of the premises by the neighborhood children for play and recreation. The lands had been used by children living nearby, ranging in age from 4 or 5 years to 14 or 15 years, "more or less continually as a place on which to play"; there were "ball-games there, boys riding on bicycles, and playing generally, fishing in the creek" on which the lands abutted; it was "commonly used for that purpose, and still is"; the children used the lands "as a playground" and "for a short-cut back to the creek and over to the Pike." This was all known to the janitor, who also acknowledged that such use of the premises did not meet with objection by the defendant; and so it was open to the jury to find that such user was had with defendant's full knowledge and acquiescence.

Defendant moved for a directed verdict at the close of plaintiffs' case. The motion was denied. Defendant thereupon rested without adducing evidence. The jury returned a verdict for plaintiffs. On rule to show cause, the award made in the parent's action *per quod* was reduced, and accepted by him as reduced. The Appellate Division of the Superior Court affirmed the consequent judgment. 10 *N. J. Super*. 486 (1950). And the case is now here by certification at defendant's instance.

The insistence is that negligence is an omission of duty in doing or forbearing, and there was here no duty laid upon the defendant possessor of the land to guard the infant plaintiff "against intrusion into this fire," and such conclusively appears as a matter of law. The point is premised on the want of an invitation to enter the lands, express or implied, and so the absence of the duty of reasonable care incident to that relation or the condition or instrumentality or agency by which the infant plaintiff came to harm. And it is urged that, even though the particular possessor of land was under the duty of reasonable care grounded in invitation, there was no default in that regard.

██ But the case is ruled by the principle of *Piraccini v. Director General of Railroads,* 95 *N. J. L.* 114 (*E. & A.* 1920). There, according to the factual preface to the opinion. land of the defendant railroad company enclosed only by a "guard fence" where it abutted a public street was used in part as a "playground." Adults and children "without let or hindrance" entered "the playground portion of the property, and crossed the property by a pathway which had been used by the public for over 40 years." The railroad maintained a signal repair machine shop on the lands. One of its employees, pursuant to orders, started a fire near the repair shop for the purpose of clearing the land of dry leaves. The plaintiff's decedent, a child of five years of age, "was discovered not far from the playground on or near the property. 'all in flames.'" The burns proved fatal. Invoking the doctrine of *Van Winkle v. American Steam Boiler Co.,* 52 *N. J. L.* 240 (*Sup. Ct.* 1890), the Court of Errors and Appeals held that liability for the fatal happening did not depend on invitation, but was grounded in "responsibility for a dangerous agency." It was affirmed that fire had always been deemed "a dangerous as well as a beneficent agency, to be handled with care." and that "setting fire to dry grass in a populous town near a pathway and playground frequented by school children" constituted a "dangerous act." Citing the stringency of the early English law that he in whose house or chambers a fire originated, whether by negligence or mere accident, was responsible for injuries occasioned by its spread to other premises, extended by the King's Bench in 1697 to fires kindled in an owner's close. Mr. Justice Swayze declared that, while the English rule had not had full acceptance, it was then settled in New Jersey that "the one who sets a fire and is negligent in setting or guarding it is liable if damage results." The test. it was said, is whether "injury to the plaintiff or to a class of which the plaintiff was one ought reasonably to have been anticipated"; and that inquiry was resolved in the affirmative. It was pointed out that a fire was "intentionally

set" by a servant of the railroad company "in the midst of a populous city, near a path frequented by the public for many years, with the acquiescence of the railroad company and frequented by school children; near also to land significantly called 'Playground.'" The principle was applied in the earlier cases of *New Jersey Fidelily and Plate Glass Insurance Co. v. Lehigh Valley R. R. Co.*, 92 *N. J. L.* 467 (*E. & A.* 1918) and *Newark Electric Light Co. v. McGilvery,* 62 *N. J. L.* 451 (*Sup. Ct.* 1898); also in the later cases of *Conrad v. Gerber,* 106 *N. J. L.* 158 (*E. & A.* 1929) and *Spenzierato v. Our Lady Monte Virgine Society of Mutual Benefit of East Orange,* 112 *N. J. L.* 93 (*E. & A.* 1934).

The rationale of the cited cases is that the possessor of land is liable for the reasonably foreseeable injurious consequences of the use of a dangerous agency on the land. Where an act carelessly done would be highly dangerous to the personal safety of others, the common law raises a "public duty" of care commensurate with the risk of harm. The law, said Chief Justice Beasley in the *Van Winkle* case, cited *supra,* "hedges round the lives and persons of men with much more care than it employs when guarding their property, so that, in this particular, it makes, in a way, every one his brother's keeper; and therefore it may well be doubted whether in any supposable case redress should be withheld from an innocent person who has sustained immediate damage by the neglect of another in doing an act which, if carelessly done, threatens, in a high degree, one or more persons with death or great bodily harm. Such misfeasances, if they result fatally, are indictable crimes. When they inflict particular damage upon individuals, they should, it is conceived, be actionable." The principle is generally deemed operative in favor of trespassers on land if the presence of the particular trespasser be discovered, or the possessor of the land be aware of constant trespassing upon a particular place or a limited area and the act is likely to cause death or serious bodily harm. *Restatement of Torts, sections* 334, 335. See, also, *section* 336. *Vide Frederick v. Philadelphia*

*Rapid Transit Co.*, 337 *Pa.* 136, 10 *A. 2d* 576 (*Sup. Ct. Pa.* 1940). And the general rule of liability covers in particular trespassing children of tender years who because of immaturity are wanting in the discretion and judgment essential to their own security. Where trespass upon the land is foreseeable, and the condition involves an unreasonable risk of death or serious bodily injury to the trespassing child, the possessor of the land is liable. *Restatement of Torts, section* 339. Habitual acquiescence in trespasses may well constitute license.

 Here, the presence of the child upon the land should have been anticipated, and from this derives the duty of care and protection. The basis of liability is the foreseeability of harm, and the measure of duty is care in proportion to the foreseeable risk. An act in disregard of this obligation is a remediable misfeasance. *Newlin v. The New England Telephone & Telegraph Co.*, 316 *Mass.* 234, 54 *N. E. 2d* 929, 155 *A. L. R.* 204 (*Sup. Jud. Mass.* 1944) ; *MacPherson v. Buick Motor Co.*, 217 *N. Y.* 382, 111 *N. E.* 1050 (*Ct. App. N. Y.* 1916) ; *Niles v. Phillips Express Co.*, 118 *N. J. L.* 455 (*E. & A.* 1937). For an illustration of the basic principle, see *Lynch v. Nurdin* (1841), 1 *Q. B.* 29. These exceptions at common law to the general rule of nonliability to trespassers proceed from humanitarian considerations and reasons of social policy. Parents cannot be with their children always. The doctrine represents a prudent and essential accommodation of the landowner's right to the use of his land and society's interest in the humane and the protection of the life and limb of its youth and the individual's interest in personal security. The correlative burden on the landowner, small in comparison to the larger interests to be served, is a necessary concession to the common welfare. Or, as it is put in the *Restatement,* the inquiry is whether the utility to the possessor of maintaining the condition is slight as compared with the risk to the children involved. Human safety is of far greater concern than unrestricted freedom in the use of land. *Restatement*

of Torts, section 339. *Vide Prosser on Torts,* 613, 624; 21 *Michigan Law Review,* 495. The particular relation gives rise to a legal duty commensurate with the demands of reasonable foresight for harm.

We need not notice the distinction under the common law between mere passive nonfeasance and malfeasance. *Vide Milstrey v. Hackensack,* 6 *N. J.* 400 (1951); *Restatement of Torts,* 797, *Scope Note to ch.* 12, *Topic* 4. There was misfeasance here.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD and BURLING—4.

*For reversal*—Justice OLIPHANT—1.