23 N.J. Super. 9 (1952)
92 A.2d 498
COLIN HARRIS, INFANT BY COLIN C. HARRIS, GUARDIAN AD LITEM AND COLIN C. HARRIS, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
MENTES-WILLIAMS CO., INC., A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1952.
Decided November 19, 1952.
*10 Before Judges FREUND, STANTON and CONLON.
Mr. Harold A. Price argued the cause for the appellants (Mr. G. Gerson Isenberg, attorney).
Mr. James B. Emory argued the cause for the respondent (Messrs. Emory, Langin & Lamb, attorneys).
The opinion of the court was delivered by STANTON, J.S.C. (temporarily assigned).
This is an appeal from the dismissal of a negligence action for personal injuries by the trial court at the close of the case.
The infant plaintiff, aged six years, suffered a fracture of his right leg on October 19, 1951. On that date he was in attendance in the first grade class at Echo Lake public school. Adjoining the school property were grounds of a church which were then being levelled and graded by the defendant for use as an automobile parking area. There was evidence that the school children customarily ran over *11 and played on the church grounds. At the time of the occurrence one of the defendant's employees was operating a bulldozer in such a way that he created furrows to a depth of three to four feet. The infant plaintiff was outdoors during the afternoon recess and at about 2:30 P.M. was seen by his teacher running with another boy across the school playground toward the church property. Shortly after she was informed that he had been injured. The operator of the bulldozer noticed him lying on the ground about 75 or 80 feet from the school yard. At the time there was another boy standing near him. He was lying at a place that had been dug out and it was three to four feet below the level of the church property between that point and the school yard. He obviously was injured as the result of having fallen or having been pushed from the high ground to the low. It is not contended that there was any contact between him and the bulldozer. The work of grading and levelling the ground had been started in the first part of the previous month. The boy did not testify and there was no evidence other than the above as to the manner in which the accident happened.
The complaint charged that the making of the excavation created an attractive nuisance and that the defendant was under a duty to properly guard it, place warnings, and take such other precautions as were reasonably necessary to protect children who were using the public school grounds and that it failed to perform such duty. The pretrial order raised the issue that the defendant was negligent by reason of its failure to "safeguard a dangerous and hazardous condition, well knowing the proximity of the school yard and the fact that minor children customarily played thereon." The case was tried on the latter theory and the dismissal was based upon the failure to establish any duty of the defendant which was violated or any negligence on the part of the defendant which was the proximate cause of the accident. At the trial the main contention of the plaintiffs was that the defendant should have erected a fence or *12 barrier around the church property which would have kept the school children off it. From a map in evidence it would appear that the common boundary between the church and the school property was about 188 feet long and that the church property extended approximately 189 feet along Germantown Road on which the school also abutted. There is no evidence from which it could be inferred that the infant plaintiff was an invitee upon the church grounds; at most he was a licensee.
However, plaintiffs predicate liability on the principle found in Restatement of the Law of Torts, sec. 339, as follows:
"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."
This section deals with the liability of a possessor of land, but it is held that one who, on behalf of the possessor, erects a structure or creates any other condition thereon is subject to the same liability and enjoys the same immunity from liability as though he were the possessor of the land, while the work is in his charge, by the dangerous character of the structure or other condition. Restatement of the Law of Torts, sec. 384. The appellants place great reliance on the doctrine enunciated in Strang v. South Jersey Broadcasting Company, 9 N.J. 38 (1952). The facts in that case bear substantial resemblance to those in the case sub judice, except that the dangerous agency there was a fire set by a landowner and left unattended with resultant injury to *13 a child not quite six years of age. The rationale of that case and those cited therein is that the possessor of land is liable for the foreseeable injurious consequences of the use of a dangerous agency on lands commonly used as a playground to trespassing children, when the condition involves an unreasonable risk of death or serious bodily injury.
An examination of cases on the subject discloses that in Piraccini v. Director General of Railroads, 95 N.J.L. 114 (E. & A. 1920) and Conrad v. Gerber, 106 N.J.L. 158 (E. & A. 1929), the dangerous agency was, as in the Strang case, fire; in Van Winkle v. American Steam Boiler Co., 52 N.J.L. 240 (Sup. Ct. 1890), it was a steam boiler; in New Jersey Fidelity & Plate Glass Insurance Co. v. Lehigh Valley R.R. Co., 92 N.J.L. 467 (E. & A. 1918), it was a vast quantity of high explosives; in Spenzierato v. Our Lady Monte Virgine Society, 112 N.J.L. 93 (E. & A. 1934), it was an explosive bomb.
It is not the theory of the appellants' case that the bulldozer, which might be regarded as a dangerous agency, was the cause of the accident and injury; rather it was the change in the contour of the land caused by the bulldozer as it moved across the land. A review of the authorities and the evidence leads us to the conclusion that the change in the contour or the level of the land caused by the bulldozer operation was not a condition which the possessor of the land or the operator of the bulldozer knew or should have known or which it realized or should have realized to be one involving an unreasonable risk of death or serious bodily harm to children standing in the position of the infant plaintiff. Further, the bulldozing operation which had been carried on for about six weeks during the school term created a condition of a constantly changing grade of the land which must have been obvious even to young children attending school and it does not appear that they lacked the ability to realize the risk of coming within the area of operation.
*14 To have permitted the submission of this case to the jury would have been an unwarranted extension of the doctrine of the Strang case and those cited therein. The judgment is affirmed.
CONLON, J.C.C. (dissenting).
I am unable to concur in the conclusion of the majority nor to distinguish the applicability of the case of Strang v. South Jersey Broadcasting Co., 9 N.J. 38 (1952). The facts are as stated in the majority opinion, but I would give greater emphasis to two phases of the evidence: first, that the grounds upon which the accident happened had for a long time been used habitually and openly as a playground by the children attending the adjoining school; and second, that the operator of defendant's tractor who dug the ditch into which the infant plaintiff fell admittedly knew that children were accustomed to play in the area. These factors do not alter the conclusion that the infant plaintiff was a mere licensee, but they have relevancy on the question as to what precautions, if any, were imposed upon the defendant in observing the degree of care required of it under the circumstances.
The cases cited in the prevailing opinion, as does the Strang case supra, all involve agencies that were innately dangerous  such as fire, a steam boiler, a quantity of explosives, or an explosive bomb. I do not understand the Strang case to hold that the danger to which an infant or in fact any licensee is subjected must of itself be an inherently dangerous instrumentality. In that case Justice Heher refers to "maintaining of the condition" and the Restatement of the Law of Torts, section 339, refers to it as an "artificial condition" which the landowner maintains. The basis of liability is the foreseeability of harm, and the issue in the instant case is whether, in digging the ditch as it did, the defendant knew or should have realized that it created and maintained an artificial condition which involved an unreasonable risk of serious bodily harm to the children whom it should have anticipated would use the grounds for *15 play. Restatement, supra. The determination of that issue was for the jury and not the court.
True, the ditch in the instant case was only three or four feet deep, but it cannot be said as a matter of law that a ditch so shallow could not constitute a dangerous artificial condition. If that were so, the question would immediately present itself as to what the standard would be  would it be 5 feet or 15 feet or 30 feet? The resolution of the question whether the ditch was such a dangerous condition as to come within the rule was for the jury.
I would reverse and remand the case for a new trial so that there might be submitted to the jury the question of whether the defendant negligently violated the duty which it owed to the infant plaintiff.