57 N.J. Super. 437 (1959)
154 A.2d 865
EUGENE CALLAHAN, JR., AN INFANT, BY HIS GUARDIAN AD LITEM, MARY CALLAHAN, AND MARY CALLAHAN AND EUGENE CALLAHAN, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
DEARBORN DEVELOPMENTS INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1959.
Decided October 23, 1959.
*439 Before Judges CONFORD, FOLEY and SCHERER.
Mr. John W. Leyden, Jr., argued the cause for plaintiffs-respondents (Messrs. Leyden and Monaghan, attorneys).
Mr. William R. Morrison argued the cause for defendant-appellant (Messrs. Morrison, Lloyd & Griggs, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal from a judgment entered on a jury verdict in plaintiffs' favor. The question presented is whether or not defendant's motion for a judgment of involuntary dismissal should have been granted.
The essential facts are not in dispute. Defendant corporation was in the course of constructing a multiple housing development in Paramus. At the time of the accident the homes therein were in various stages of completion. Defendant had knowledge that children played in the area, this being limited, however, to knowledge that they played on a topsoil pile on the exterior of the premises.
*440 On March 9, 1955 the infant plaintiff, then 11 years of age, accompanied by four other boys wandered into the development area. Once there, they were attracted by a house, the exterior of which had been completely framed. They tried the front door but it was locked. Finding a ladder leaning against the building they propped it up and the smallest child climbed it, opened a window, crawled in and then opened the locked door from the inside allowing the others to enter. Because the foundation excavation had not yet been refilled, the window was located about 12 feet above ground level. In going through the house they came upon an electric chain saw which was on a work table, located a switch on the under side of the table and set the saw in motion. One of the boys who had some familiarity with the use of electric tools ran a board through while the others looked on. Plaintiff in attempting to do the same severed one of his fingers and injured another. He admitted that he had seen the saw in operation and that he knew it was a dangerous device. Upon this evidence defendant moved for dismissal urging that there was no proof of the violation of a duty to the infant and also that he was guilty of contributory negligence and assumption of risk as a matter of law.
The sole ground assigned for reversal is that plaintiffs failed to establish a prima facie case of defendant's infraction of its duty to the trespassing infant plaintiff.
The infant trespasser rule laid down in Restatement, Torts, § 339 is now firmly imbedded in the law of this state. Simmel v. New Jersey Coop Co., 28 N.J. 1 (1958); Wytupeck v. Camden, 25 N.J. 450 (1957); Harris v. Mentes-Williams Co., Inc., 11 N.J. 559 (1953); Coughlin v. U.S. Tool Co., Inc., 52 N.J. Super. 341 (App. Div. 1958), certification denied 28 N.J. 527 (1959); Diglio v. Jersey Central Power & Light Co., 39 N.J. Super. 140 (App. Div. 1956); Hoff v. Natural Refining Products Co., 38 N.J. Super. 222 (App. Div. 1955). The section states:

*441 "Artificial Conditions Highly Dangerous to Trespassing Children.
A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."
As was said in Simmel v. New Jersey Coop Co., supra, 28 N.J. at page 9, no inflexible rule can be set forth concerning the "prophylactic measures" to be taken by a defendant in a particular situation; and in Diglio v. Jersey Central Power & Light Co., supra, 39 N.J. Super. at page 145, the circumstances of each case are of pivotal significance. Thus the factual complex must be examined to determine whether or not the case falls within the governance of the rule. Guidance in the pursuit of this inquiry is found in the precedents which have developed since the acceptance of the doctrine by our courts. Simmel v. New Jersey Coop Co., supra, emphasized that the land owner or occupier is not an insurer of the infant; and in Strang v. South Jersey Broadcasting Corp., 9 N.J. 38, 45 (1952) the court said "The basis of liability is the foreseeability of harm, and the measure of duty is care in proportion to the foreseeable risk." Coughlin v. U.S. Tool Co., supra, in which recovery was denied, stressed that proof of compliance with all four conditions recited in the rule is requisite to a prima facie case, 52 N.J. Super. at page 346.
In the Restatement itself the bounds of the duty imposed are discussed:
"The duty which the rule stated in this Section imposes upon the possessor of land is based upon the well-known tendency of children to trespass upon the land of others and the necessity of protecting *442 them, even though trespassers, from their childish lack of attention and judgment. The duty of the possessor, therefore, is only to keep so much of the land upon which he should recognize the likelihood of children trespassing, free from those conditions which, though observable by adults, are likely not to be observed by children or which contain risks the full extent of which an adult would realize but which are beyond the imperfect realization of children. It does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them." Restatement, Torts, § 339, note b. (Emphasis added.)
With these principles in mind, we deem it advisable to treat with each of the conditions and with the proof in support thereof separately, as far as that may be practicable.
"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass."
"This means first of all that the defendant must have reason to anticipate the presence of the child at the place of danger. where any such reason is lacking, there is no duty to look out for him, and no liability." (Emphasis added.) Prosser, Trespassing Children, 47 Cal. L. Rev. 427, 448 (1959). As we have already noted, defendant's only knowledge of the prior presence of children on any part of the premises was that on occasion they played on the topsoil pile. Judged by any reasonable interpretation of "foreseeability" we cannot accept the proffered thesis that knowing of this, defendant should also have known that it was likely that a child would enter its building by climbing through a window 12 feet above ground level; open a door which defendant had taken the precaution to lock, and admit other children to the building. Nor do we think that defendant should be charged with foreseeing that, having entered, the children would place in motion and operate an electric saw and by their own acts create a "place of danger." To hold otherwise would be to make "foresight" synonymous with "omniscience."
"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children."
*443 Here again "foreseeability" is the bedrock upon which the proof requirement is founded. If, as we hold, the defendant had no reason to foresee that children would reach the "place of danger" then certainly in logical thinking the capacity of the saw to become "an unreasonable risk of serious injury," considering its location behind a locked door, cannot be said to have been a thing which defendant "realized or should have realized."
"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it."
In this case the infant plaintiff's realization of the risk involved in intermeddling with the saw is beyond debate as the following excerpt from his testimony establishes:
"Q. Did you see George cut the piece of wood with the saw?
A. Yes.
Q. Did you know from what you saw right in front of you that this electric saw would tear a piece of wood, cut it right in half? Did you know that?
A. I saw it.
Q. You saw that?
A. Yes.
Q. Would it be fair for me to say you knew that that saw would cut your hand, to, if it got in the way?
Mr. Leyden: I object to that, arguing with the witness.
Q. From what you saw of this saw, too, right in front of you, when George was using it, did you know it was dangerous?
A. Yes."
It has been suggested that notwithstanding plaintiff's acknowledgment that he knew the instrumentality to be dangerous, he should not be debarred from recovery since it does not appear that he was aware of the danger which inhered in the manner in which he used it. We deem such test of culpability to be entirely subjective and in disaccord with the intent of the rule. See Restatement, Torts, § 339, note b, supra.
"(d) the utility to the possessor of maintaining the condition is slight compared to the risk to young children involved therein."
*444 In support of the contention that the utility of the saw was outweighed by the unreasonable risk of harm to which plaintiff was subjected, it is urged that the risk would have been obviated if the main switch which was located in the basement of the building had been turned off. This completely overlooks the adventurous nature of the infant trespasser, the very characteristic that exempts him from the sanctions which would be imposed upon his adult brother in the same circumstances. We find it unreasonable to infer that had this been done the boy would not have been injured. More likely it seems that the frustration engendered in the visitors when they found the device incapable of immediate operation would have been a challenge to their boundless ingenuity, which they would have promptly accepted. The locked door having presented no barrier to their entrance it is doubtful indeed that they would have experienced any hesitancy in searching the premises until they found the source of the electrical supply.
Thus it would appear that the only course open to the defendant as a precaution against the intermeddling of infant trespassers was to remove the saw from the premises each day at the close of work. If such is held to have been defendant's obligation, it would naturally encompass the removal of all other tools and devices in or about the building project which might be or become dangerous when put to use. Considering the unlikelihood of the trespassers (a) entering the building, and (b) putting the machinery in operation, we find that the utility of the device in serving the legitimate purposes of the defendant was far greater than the foreseeable risk of injury  if by any process of reasoning the risk here involved can be held to have been foreseeable.
Implicit in a just application of the infant trespasser doctrine is a concept which is stated by Dean Prosser thus:
"To begin with, there is virtually no condition upon any land with which a child may not possibly get himself into trouble. He may choke to death upon a green apple, pick up a stick and poke it into *445 his eye, or have his skull fractured by a rock found and thrown by his companion. Children may, and do, do practically everything. Unless the possessor is to shoulder the impossible burden of making his land completely `child proof,' which might mean razing it to the bare earth, something more is called for than the general possibility of somehow coming to some harm which follows the child everywhere throughout his daily existence." Trespassing Children, 47 Cal. L. Rev. at page 452.
The totality of the facts leads us to the conclusion that the proof neither conforms literally with the principles recited in Restatement, Torts, § 339, supra, nor with the objective the doctrine was designed to achieve. This we take to be the providing of a fair and reasonable basis for the adjustment of the conflict between human rights and property rights which gives recognition to the superior position in the social scheme of the former yet refrains from unduly burdening the latter. Cf. Strang v. South Jersey Broadcasting Corp., supra, 9 N.J. at page 45.
We therefore reverse and direct that judgment be entered in favor of the defendant.
CONFORD, J.A.D., dissenting.
I am of the view that the issue of liability was properly committed to the jury in this case. Under the opinions of our courts cited in the majority opinion accepting and applying the Restatement of Torts rule (§ 339) in this area of tort liability, it appears to me that it was fairly within the appropriate domain of the fact-finder to find and conclude that the defendant should have foreseen that children of the age of the infant plaintiff and his companions were likely to come upon this unfinished dwelling, attempt to gain entry thereto, and succeed by the expedient of the handy ladder left outside the house by defendant and the unlocked windows; moreover, that once in the structure, one of them, not fully appreciative of the susceptibility of injury through inexpert handling of the electric power-saw, might play with it and sustain serious injury, just as actually happened; and, finally, that defendant *446 was negligent in not taking one or more of several possible precautionary steps to avert this accident.
It should not be necessary for me to say that by this conclusion I am not necessarily expressing my own personal judgment as to defendant's negligence or concerning the existence of any of the prerequisites for liability set out in the now authoritative Restatement section cited above, but only my conviction that the factual circumstances shown by the record, affording plaintiffs all legitimate permissible inferences in their favor, as is required, were such that fairminded men might honestly and reasonably differ as to whether the conclusions undergirding liability should be drawn. Where this is so, the ultimate issues in any kind of negligence action are for the jury. Rapp v. Public Service Coordinated Transport, 9 N.J. 11, 17 (1952); Wytupeck v. Camden, 25 N.J. 450, 464 (1957); Hoff v. Natural Refining Products Co., 38 N.J. Super. 222, 237 (App. Div. 1955). The tendency of some courts to be astute to find expedients whereby to exercise greater control over juries in this field of liability than they do in negligence cases generally has been deprecated. 2 Harper and James, Law of Torts, (1956), § 27.5, pp. 1456, 1457.
A closer look at the facts is in order. Not only was the structure here involved one of a row of houses in various stages of construction; it was only a block away from another housing development under construction which defendant's representative knew was being patrolled by local police to keep trespassing children away. Such was defendant's concern over the imminence of similar incursions by children on its own properties that it had requested the same surveillance by the police that was being afforded the other development. This was not forthcoming, and defendant had taken no other means of watching out for such trespassing children.
The specific house here of concern was one in which materials for other houses in the development were processed. In addition to the table power-saw on which the infant *447 plaintiff injured himself, there were two gas-powered chain-saws and various other tools in the building. The electric power-saw was mounted on a table, and its blade could be recessed into the table. The front door was locked by a lock which could be opened from the inside. A side door was "locked with canvas."
Aside from the specific basis for foreseeability of trespass by children here manifested, it is common knowledge that children, especially boys of about the age of the instant plaintiff, are attracted to buildings in course of construction as places for play. See Woods v. City and County of San Francisco, 148 Cal. App.2d 958, 307 P.2d 698 (Ct. App. 1957); Chase v. Luce, 239 Minn. 364, 58 N.W.2d 565 (Sup. Ct. 1953).
Once it is conceded that it was not unreasonable for defendant to be expected to foresee that children would be attracted to the obviously unfinished house (among other things, the foundation trenches had not yet been backfilled), it does not require a great stretch of the imagination further to foresee that such children, their access to the unexplored interior frustrated by a locked door, might take the convenient mode of entry afforded by the readily available ladder which defendant's agents had left leaning against the side of the house and lift one of the windows, which were not equipped with locks. There was some evidence that the windows were six feet above ground level. The common proclivity of children to climb onto things and into places where they do not belong is notorious. Wytupeck v. Camden, supra; Diglio v. Jersey Central Power & Light Co., 39 N.J. Super. 140 (App. Div. 1956); Hoff v. Natural Refining Products Co., supra. As observed in Bartleson v. Glen Alden Coal Co., 361 Pa. 519, 64 A.2d 846, 851 (Sup. Ct. 1949), "That children will accept a situational invitation to climb is a matter of common knowledge."
Defendant emphasizes that it should not be expected to have foreseen the entry into a closed building, even by eleven-year-old children. This is an area of law in which *448 recriminations over the moral and ethical aspects of the behavior of young children, as such, have no proper place. As we said in the Hoff case, supra (38 N.J. Super., at page 234): "Nor should there intrude the notion that at any given age the child `should know better.' We are here necessarily dealing in pragmatics, not theories of improvement of child behavior." The critical inquiry in this and cognate cases from the standpoint of appraisal of the defendant's duty is not whether the conduct of the children is offensive to adult concepts of good order in the community but whether, realistically, it is reasonably expectable behavior by children of the age, experience, background and discretion of those involved in the particular case, stimulated by the motivations generated by the surrounding circumstances, if the presence of children of that description was reasonably foreseeable by the defendant. The fact is that while the law of property says otherwise, young children commonly regard unoccupied structures, particularly where under construction, as fair territory for adventure. A property owner cannot realistically expect them to keep out because he has locked a door. If the rationale of the rule of law expressed in the Restatement of Torts section is to be implemented and young children protected even against their own immaturity, courts ought not predicate decisions of cases upon standards of child behavior different from those which in fact commonly exist and which are reasonably debatably foreseeable in reference to the specific case.
There is, moreover, another influential consideration in appraising both the nature of defendant's duty and its compliance with that duty in this case. This is that the degree of care required to be exercised by a landowner depends upon the nature and extent of the harm or hazard to which the endangered person will be exposed by lack of care in the particular case. As in negligence law generally, while the verbal formula for expression of the duty of care may be constant, circumstances of special or unusual hazard may increase the precautions required to be undertaken by the *449 actor in discharge of that duty. See Ambrose v. Cyphers, 29 N.J. 138, 144 (1959). As stated in one of our leading recent cases in this field: "Here, the presence of the child upon the land should have been anticipated, and from this derives the duty of care and protection. The basis of liability is the foreseeability of harm, and the measure of duty is care in proportion to the foreseeable risk" (emphasis added). Strang v. South Jersey Broadcasting Co., 9 N.J. 38, 45 (1952). Wytupeck v. Camden, supra (25 N.J., at page 462). In the instant case the conjunction of a plugged-in electric saw, powered to operate at the flick of a switch on the tool, and a group of eleven-year-old boys in an adventuresome mood, spelled obvious danger of serious harm to one of them. A jury could reasonably expect greater efforts on the part of the landowner to prevent the eventuation of that combination of circumstances than would be warranted if no tool of such dangerous propensities were on the premises. It might conclude that due care in such circumstances called for putting the ladder away if it was impracticable to lock the windows, or covering up the saw, or unplugging the power cord, or at least turning off the power source in the basement. It is no answer to speculate that the children might have overcome any or all of these obstacles and one of them still sustain injury. The jury had only to deal with the case before it and to assess the reasonableness vel non of the care exercised by the property owner under the particular circumstances presented. Another case will yield its own determinations.
The majority deem the owner exculpated by the infant plaintiff's admission that he knew the saw was "dangerous" in that he knew the saw "would cut your hand, too [just as a piece of wood] if it got in the way." If this represents a concept of contributory negligence as barring recovery as a matter of law, it is refuted by the testimony of the other boy, George Kelly, who had tried the saw first. That lad, more experienced with this type of tool, explained that the plaintiff, Eugene, was using the saw improperly: "Gene *450 didn't know about the saw, and he had the wood on the wrong side." From this the jury was perfectly free to conclude that the plaintiff did not appreciate the full extent of the risk in using the saw and that his trying it, after seeing George easily cut a board with it, was not such conduct as necessarily bespoke contributory negligence, having regard to the expectable capacity, intelligence, discretion and judgment of a child of his age and background. See Dillman v. Mitchell, 13 N.J. 412, 415 (1953).
Considering plaintiff's degree of knowledge of the danger attendant upon his venture with the saw not as a matter of contributory negligence, but in the light of the extent of defendant's duty, I think the same conclusion is indicated. In this regard a jury may have properly considered the effect of group psychology upon the behavior of an individual member of a group of boys, if it concluded that defendant could have foreseen that boys might get into the house as a group (indeed, more easily than an individual). The challenge of example among boys is well-known, particularly when dealing with the novel and the untried. It seems to me that the jury not unreasonably might have concluded that defendant should have foreseen that children old enough to get into the house with its ladder might yet not be old enough  they or one of them  to appreciate the full extent of the hazard involved in trying out the saw on a board. When George easily accomplished the cutting of a board with the saw, Eugene imitated him, obviously not cognizant of the fact that there was more skill and risk involved in the operation than tragic experience was imminently to bring home to him. Comment b. of Section 339 of the Restatement (p. 922), dealing with the principle that the owner need not exercise care as to risks appreciable by child trespassers, says:
"The duty of the possessor, therefore, is only to keep so much of the land upon which he should recognize the likelihood of children trespassing, free from those conditions which, though observable by adults, are likely not to be observed by children or which contain *451 risks the full extent of which an adult would realize but which are beyond the imperfect realization of children. It does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them." (Emphasis added.)
See also Prosser, "Trespassing Children," 47 Calif. L. Rev. 427, 455, 461, 462 (1959). See Buckeye Irrig. Co. v. Askren, 45 Ariz. 566, 46 P.2d 1068 (Sup. Ct. 1935) (a child igniting blasting powder on ground not realizing that the resulting flare would ignite powder in his pocket  recovery allowed).
The incidence of accidents of just such a type as this one with power-saws, involving even adults familiar with their use (amateur hobbyists, manual training teachers, carpenters, etc.), is so considerable as almost to be a matter of judicial notice. In my judgment there is hardly room for debate on the proposition that an eleven-year-old child, though knowing the obvious fact that the saw would injure him if his hand made contact with the whirring blade, would not upon his first experience with such an implement appreciate fully the hazard involved in its use.
Finally there is presented the condition of liability fixed in (d) of the rule  "the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein." This, of course, is also for the appraisal of the jury unless no reasonable difference of opinion with respect to the matter is tenable. I have indicated some of the specific steps the owner could have taken to minimize the possibility of such an accident as this. A jury could reasonably conclude that none of them, individually or collectively, would so hamper the prosecution of defendant's business as to outweigh in terms of social values the foreseeable serious hazard to the safety of young children in maintaining the condition as it existed.
"As said in Strang [v. South Jersey Broadcasting Co., 9 N.J. 38 (1952)], the rule proceeds from humanitarian considerations and reasons of social policy. It represents a prudent and essential accommodation of the landowner's right to the use of his land and *452 society's interest in the humane and the protection of the life and limb of its youth and the individual's interest in personal security. The correlative burden on the landowner, small indeed in comparison to the larger interests to be served, is a necessary concession to the common welfare. Human safety is of far greater concern than unrestricted freedom in the use of land." Wytupeck v. Camden, supra (25 N.J., at page 464).
Defendant places considerable reliance upon Coughlin v. U.S. Tool Co., Inc., 52 N.J. Super. 341 (App. Div. 1958), certification denied 28 N.J. 527 (1959). I am fully in accord with that determination. But it does not militate against the result at the trial here. There is no fair comparison between the condition which the court there felt was not a reasonably foreseeable danger to children, under all the circumstances presented, and the very dangerous apparatus involved here, considered in the light of the potentiality of access thereto by young children.
I would affirm the judgment.