89 N.J. Super. 452 (1965)
215 A.2d 378
NORMAN R. SCHEFFER, AN INFANT, BY HIS GUARDIAN AD LITEM, NORMAN E. SCHEFFER AND NORMAN E. SCHEFFER, PLAINTIFFS-APPELLANTS,
v.
VERA M. BRAVERMAN, JULIETTE L. ROTHBARD, BEVERLY G. KISLAK, RICHARD D. BRAVERMAN AND MARJORIE E. BRAVERMAN AS PARTNERS TRADING AS UNIVERSAL ASSOCIATES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1965.
Decided December 21, 1965.
*453 Before Judges KILKENNY, GOLDMANN and LEONARD.
Mr. Norman J. Abrams argued the cause for appellants (Messrs. Abrams, Kestenbaum & Hendricks, attorneys).
Mr. Paul B. Thompson argued the cause for respondents (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
The infant plaintiff sued defendants in negligence in the Superior Court, Law Division, to recover *454 damages for personal injuries sustained by him on December 31, 1961, while sledding down a pathway through wooded, unfenced, vacant land owned by defendants, in Plainfield, New Jersey. With another boy aboard the sled, infant plaintiff seemingly lost control of the sled for some unexplained reason and steered it into a tree at the side of the pathway. Plaintiff was 15 1/2 years old at the time of the accident. His father joined in the suit for damages per quod.
Defendants moved for a judgment of involuntary dismissal at the close of plaintiffs' proofs. The trial court granted the motion. Plaintiffs appeal from the judgment of dismissal.
The path in question had been created by persons walking through the woods, thereby trampling down any growth along the pathway. It had no special traps, holes, obstacles, or artificially created conditions, potentially dangerous thereon. The path, about five feet wide, led through the woods from the public highway to a pond in the rear of the tract. This wooded and undeveloped plot was situated in a built-up area and people in the neighborhood used it, without any express permission of the owners, for skating on the pond, sledding down the pathway and the running of dogs. The infant plaintiff testified that he had been on the property at least 20 times. There was also testimony by a police officer that defendant Vera M. Braverman told him, when he reported the incident to her, that she knew that "children had trespassed upon her property frequently and that it was a problem and that she was going to complain to the police about it." The pathway had not been blocked off by any means and there were no posted signs forbidding trespassing.
On the day in issue there was snow on the pathway, about two or three inches deep and packed down. The actual sledding run, which began a few steps from the top of the incline and ended before the street at the bottom, was estimated to be from 80 to 100 yards long. The steepness of the path was not accurately described, but the boy who had been sledding with the infant plaintiff testified:
*455 "Well, it was fairly steep and you could just give it, just push it, or just do what you say, a belly flopper, or whatever it was, and just proceed that way."
The same boy stated that if a sledder went straight down the pathway, he would "have to drag his feet an awfully long way" to avoid going out into Woodland Avenue.
The infant plaintiff testified that he had been sledding on the pathway for about three or four hours before the accident occurred about 2 P.M. He had ridden down the pathway about 15 times before this particular incident. In the downward run during which he was injured, plaintiff was lying on the front of the sled and steering, while his friend, John Farrington, was kneeling on the sled between plaintiff's legs. John's version was that "the runner of the sled got caught in some high snow and it brought us into the tree." Plaintiff's version was that "towards the right side of the path I might have hit a bump or something. * * * possibly a branch or soft snow, or my foot dragged or something of that sort, and so I steered off to the left to get in the center of the path. Then I must have hit something which threw me off the path and into a tree." Additional testimony by plaintiff indicated that he did not believe that he had hit deep snow, as John stated, because "If you hit the deep snow you usually come to a stop." And further:
"I think I just swerved to the right and instead of keeping going into the snow I pulled the sled back to the left side of the path and then I hit the left side of the path somehow and I just came to an abrupt stop where I flew off."
The gist of plaintiff's argument, as we understand it, is that defendants knew, or ought to have known, that children were coming upon their land, either as trespassers or implied licensees, and using it for sledding, skating and other recreational purposes, and they did nothing to restrain these users of the land, by fencing in the land, or posting signs, or taking personal or police action to bar the entrants. Plaintiffs rationalize that defendants could reasonably foresee that some *456 child might injure himself in using the pathway for sledding purposes, even though the pathway itself was not inherently dangerous, either with or without the snow on it. Plaintiffs conclude that this foreseeability of harm to potential users of the land, without precautions taken by the owners to prevent the use, makes them liable for injuries sustained on the land by an infant user thereof.
We have come a long way in our law in visiting tort liability on owners of land for injuries sustained by children trespassing thereon. But we have not come as far as plaintiffs would have us come in the instant case. We "have accepted section 339 of the Restatement of Torts as the basis for the liability of a possessor of land for bodily harm sustained thereon by child trespassers." Hoff v. Natural Refining Products Co., 38 N.J. Super. 222, 224 (App. Div. 1955). That section would make a possessor of land subject to liability for bodily harm to young children trespassing thereon caused by a situation or other artificial condition which he maintains upon the land, if "the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children." Section 339 (b). Subsection (c) requires that "the children because of their youth, do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it."
Where liability has been imposed under our cases upon the possessor of land for injuries to trespassing children, or where submission of the issue to the jury has at least been required, the condition upon the land causative of the injuries was dangerous in character and gave rise to a forseeable risk of harm. Additionally, a relatively young child was involved. In Strang v. South Jersey Broadcasting Co., 9 N.J. 38 (1952), a child one month less than six years of age entered unfenced land and was severely burned by a fire set by defendant's janitor and left unattended. The court held defendant liable on the ground that the possessor of land is liable for reasonably foreseeable *457 injurious consequences of the use of a dangerous agency on the land. In Harris v. Mentes-Williams Co., 11 N.J. 559 (1953), defendant's negligence was held to be a question for the jury, where a six-year-old pupil fell into a furrow four feet deep which had been excavated by defendant in a lot adjacent to a school, which had been used as a school playground. The court in Harris interpreted the rationale in the Strang case to be that "the use of a dangerous instrumentality gave rise to a foreseeable risk of harm." (Italics ours) 11 N.J., at p. 562.
The dangerous condition upon defendant's land in Hoff v. Natural Refining Products Co., supra, was a huge mound of chemical refuse and the injured plaintiff was a 13-year-old boy. The relevant factor of the age of the infant plaintiff is comprehensively discussed in the Hoff decision. Wytupeck v. City of Camden, 25 N.J. 450 (1950), allowed recovery where the nine-year-old plaintiff was severely injured by coming in contact with uninsulated high voltage wires, an obviously dangerous instrumentality. The cause of injury was a cyclone fence topped by barbed wire, and the injured a child of tender years, in Diglio v. Jersey Central Power & Light Co., 39 N.J. Super. 140 (App. Div. 1956); it was a three-year-old boy who drowned in an open sedimentation tank resembling a swimming pool in Cloyes v. Delaware Township, 23 N.J. 324 (1957); an open vat of nitric acid and a three-year-old were involved in Healing v. Security Steel Equipment Corp., 51 N.J. Super. 123 (App. Div. 1958); and in Simmel v. New Jersey Coop Co., 28 N.J. 1 (1958), the four-year-old plaintiff was injured when he fell into an unattended fire which was burning on defendant's land.
As opposed to the foregoing cases, all of which involved dangerous situations upon the land and reasonable foreseeability that an infant trespasser of tender years might be injured as a result of their presence, we upheld a dismissal of the action in Coughlin v. United States Tool Co., Inc., 52 N.J. Super. 341 (App. Div. 1958), where a 15-year-old boy fell from the roof of a garage on defendant's land on which *458 the boy had been playing during the night-time. We stated that neither the bumper guards used by the boy to reach the garage roof nor the roof were of such character as likely to cause an unreasonable risk of serious bodily harm within the true meaning of section 339(b) of the Restatement of Torts. We also concluded that a jury could not reasonably find that the 15-year-old plaintiff "did not realize the risk." 52 N.J. Super., at p. 348.
So, too, in the instant case, a pathway through a wooded tract is not ordinarily likely to cause an unreasonable risk of serious bodily harm. As the Coughlin case aptly expressed it:
"* * * to allow recovery under the facts of this case would make every property owner an insurer of infant trespassers contrary to the Supreme Court's admonitions in the Simmel case, supra (28 N.J., at p. 11). To apply here the infant trespasser doctrine would be to throw off all limitations on landowner's liability. We cannot permit liability to be based upon the maintenance of natural conditions, common or ordinary objects * * *."
That language is equally applicable here. Certainly, a jury could not reasonably find that a 15-year-old boy, only four or five months short of his sixteenth birthday, as was this plaintiff, who had been sledding on this pathway three or four hours and had ridden down the incline on his sled at least 15 times prior to his accident, did not realize the risk, if any, involved in the sport indulged in by him.
We conclude that the dismissal was proper. Accordingly, the judgment of dismissal is affirmed.