121 N.J. Super. 335 (1972)
297 A.2d 17
THOMAS SCHECK, AN INFANT BY HIS GUARDIAN AD LITEM, HAROLD V. SCHECK, INDIVIDUALLY, PLAINTIFF
v.
HOUDAILLE CONSTRUCTION MATERIALS, INC., DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 20, 1972.
*336 Mr. Rudolph Markowitz for plaintiff.
Mr. Myron J. Bromberg for defendant (Messrs. Porzio, Bromberg and Newman, attorneys).
COLLINS, J.C.C., Temporarily Assigned.
Plaintiff has moved to vacate an order entered by this court on June 18, 1971 which dismissed the first and second counts of his amended complaint. This court has agreed to consider the motion as one pursued in accordance with R. 4:50-1(f), and briefs have accordingly been filed to supplement the oral arguments of counsel.
This matter arises out of injuries suffered by the infant plaintiff when he dove off an apparently abandoned barge located in a body of water on defendant's property. Plaintiff's complaint, as amended by papers filed with the court on May 24, 1971, alleged in its first count that defendant owed a duty to see that the area in question was safe for the uses to which it knew the property was being put by infant trespassers and/or licensees. In his second count plaintiff alleged defendant "wilfully, wantonly and/or maliciously *337 fail[ed] to guard, or warn against, a dangerous condition, use, structure or activity." The order entered on June 18, 1971 struck, with prejudice, the entire first count, and struck "that portion of the second count which charges defendant with `wanton' failures * * * so that after entry of this order, the allegations of paragraph two of the second count of the amended complaint shall be limited to allegations that defendant `did wilfully and/or maliciously fail to guard, or warn against, a dangerous condition, use, structure or activity.'"
This court entered the order in conformance with what it then believed to be the proper interpretation of N.J.S.A. 2A:42A-1 et seq. In reaching its conclusion at that time this court had no interpretative case law available to it, but only the bald wording of the statute. I now feel, in the light of subsequent case law and further research into the applicable legislative history, that this court's initial interpretation of N.J.S.A. 2A:42A-1 et seq. was in error.
The act in question, L. 1968, c. 73 (N.J.S.A. 2A:42A-1 et seq.) reads:
An act relating to the liability of owners, lessees and occupants of premises towards persons entering on their premises for sport and recreational activities in certain cases, and repealing chapter 107 of the laws of 1962.
Be it enacted by the Senate and General Assembly of the State of New Jersey:

C. 2A:42A-2 Definition.
1. As used in this act "sport and recreational activities" means and includes: hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing and any other outdoor sport, game and recreational activity including practice and instruction in any thereof.

C. 2A:42A-3 Limitation of liability of owner, lessee or occupant of premises.
2. Except as provided in section 3 of this act:
a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by *338 reason of any activity on such premises to persons entering for such purposes;
b. An owner, lessee or occupant of premises who gives permission to another to enter upon such premises for a sport or recreational activity or purpose does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.

C. 2A:42A-4 Liability not limited in certain instances.
3. This act shall not limit the liability which would otherwise exist.
a. For willful or malicious failure to guard, or to warn against a dangerous condition, use, structure or activity; or
b. For injury suffered in any case where permission to engage in sport or recreational activity on the premises was granted for a consideration other than the consideration, if any, paid to said landowner by the State; or
c. For injury caused, by acts of persons to whom permission to engage in sport or recreational activity was granted, to other persons and to whom the person granting permission, or the owner, lessee or occupant of the premises, owes a duty to keep the premises safe or to warn of danger.

C. 2A:42A-1 Repealed.
4. "An act limiting the liability of landowners of agricultural lands or woodlands for personal injuries to or the death of any person while hunting or fishing upon the landowner's property," approved July 6, 1962 (P.L. 1962, c. 107), is repealed.

C. 2A:42A-5 Act does not create liability.
5. Nothing in this act shall create a duty of care or ground of liability for damages for the death or injury to person or property.
6. This act shall take effect July 1, 1968.
The legislative history of this statute is sparse, although the efforts of Arthur S. Applebaum, Assistant Research Director of the New Jersey Legislative Services Agency, Division of Legislative Information and Research, and his staff, have provided all the information that appears to be available in this regard. The court expresses its thanks to Mr. Applebaum and his staff for their valuable assistance.
The statute whose interpretation is currently in issue replaced an earlier legislative enactment, L. 1962, c. 107. This earlier law, entitled "An act limiting the liability of landowners of agricultural lands or woodlands for personal injuries *339 to or the death of any person while hunting or fishing upon the landowner's property," was very limited in the scope of the protection which it afforded. In effect it protected only farmers and possessors of forest lands from liability for injuries incurred by persons while hunting or fishing upon their property. In the years from 1965 to 1968 five bills were introduced in our Legislature to modify the provisions and effect of the 1962 statute. While there were apparently no statements filed with these bills, in none of them does any language appear which would indicate to this court that the Legislature intended to abrogate the principles contained within the line of cases headed by Strang v. South Jersey Broadcasting Corp., 9 N.J. 38 (1952). This court must, therefore, agree with the views expressed by Judge Byrne in his decision in O'Connell v. Forest Hill Field Club, 119 N.J. Super. 317 (Law Div. 1972):
The 1968 act was intended to broaden the former act which protected owners of agricultural land or woodlands from liability for injuries to hunters or fishermen. There is, however, nothing in the legislative history of the act to show that the Legislature intended it to apply to an infant trespasser. The most likely interpretation that could be placed on this act is that it was intended to protect the landowners from liability to sportsmen who come upon their property, be they licensees or trespassers. The original act limited the scope of hunters and fishermen, but the Legislature finding that to be inadequate in this day where people have more leisure time and various recreational activities abound, it enacted the more comprehensive law. Yet no where is there any indication that it should apply to the situation at hand. There is no legislative history, no statement attached to the bill as introduced, no statement by the Governor when the bill was signed into law indicating an intent to substantially modify the line of cases from Strang, supra., to date. [At 326]
Plaintiff has relied in large part upon Judge Byrne's decision, noted above, as the basis for its motion to vacate our previous order. However, as defendant has pointed out, the facts in O'Connell differ markedly from those currently before us. Defendant has particularly emphasized the fact that the infant plaintiff here is 11 years older than the three-year-old *340 child involved in the O'Connell case. Defendant argues, in effect, that the O'Connell child was incapable of forming the intent requisite to bring the exclusions of the act into play, and that in any case the infant trespasser rule is unavailable to a plaintiff of the Sheck boy's age under the circumstances of this case.
In Strang v. South Jersey Broadcasting Co., supra, 9 N.J. at 45, Justice Heher noted that "The basis of liability is the foreseeability of harm, and the measure of duty is care in proportion to the foreseeable risk." See also Taylor v. N.J. Highway Authority, 22 N.J. 454, 463 (1956). In viewing the role which the age of a child may play in the determination of whether the infant trespasser rule is applicable or not our courts have clearly indicated that there are to be no arbitrary cutoff points beyond which its protection is unavailable. Hoff v. Natural Refining Products Co., 38 N.J. Super. 222, 230-236 (App. Div. 1955). See also Dobrzynski v. Liveright, 118 N.J.L. 589, 591 (E. & A. 1937); Nichols v. Grunstein, 105 N.J.L. 363 (E. & A. 1929).
* * * If the justification for expanding the liability of the possessor of land as to trespassing children is founded on the "immaturity" of children and their consequent want of the "discretion and judgment essential to their own security," there is no place for the assumption in law that any particular child, in the absence of conclusive evidence thereof, has shed his immaturity at any particular age. In this domain the law may wisely find its guide in the general sense of mankind. Nor should there intrude the notion that at any given age the child "should know better." We are here necessarily dealing in pragmatics, not theories of improvement of child behavior. Close curtailment of liability by law will not dull the instinct of the child for carefree play. But the fair application of the rule of liability on a realistic basis will encourage the adoption of safety measures by industrial and other land occupiers and subserve the intent of the rule that the risk of foreseeable injuries to children be borne by those best able on the whole to prevent them. Hoff v. Natural Refining Products Co., supra. 38 N.J. Super. at 234.
See also Scheffer v. Braverman, 89 N.J. Super. 452 (App. Div. 1965); Bush v. N.J. & N.Y. Transit Co., Inc., 30 N.J. 345 (1959).
*341 Although this infant plaintiff is close to being of an age at which it would be possible to hold as a matter of law, in the light of the testimony produced at the depositions of plaintiff, that he was not entitled to the protection of the infant trespasser rule, there is still enough of a doubt in the court's mind to compel us to consider this question to be one for the jury. Coughlin v. United States Tool Co., Inc., 52 N.J. Super. 341 (App. Div. 1958); Bush v. N.J. & N.Y. Transit Co., Inc., supra, 30 N.J. at 353-354. Further, this court believes that the question of the intent which the infant plaintiff had when he entered upon defendant's lands and whether said intent was of such a nature as to call into play the statutory protection of N.J.S.A. 2A:42A-1 et seq. would also be one for the jury, assuming, of course, the other prerequisites for that provision's application had also been met. Unfortunately for defendants this court believes one such prerequisite has not been met and, consequently, that N.J.S.A. 2A:42A-1 et seq. is totally inapplicable to this case.
In setting up the protections provided for in the 1962 statute the Legislature clearly intended it to apply solely to wooded properties and farmlands. However, as time passed our Legislature felt a need to expand upon the categories of land protected. Thus in L. 1968, c. 73 we see the terms "agricultural lands or woodlands" changed to the broader term, "premises." While it is apparent that the Legislature intended to expand the immunities to be provided landowners, this did not mean, as was noted in the O'Connell decision, that the Legislature had suddenly decided to wipe out the entire line of Strang cases nor to overturn the principle that "human safety is of far greater concern than unrestricted freedom in the use of land." Strang v. South Jersey Broadcasting Co., supra., 9 N.J. at 45; Simmel v. New Jersey Coop. Co., 28 N.J. 1 (1958). What, then, did this change of language represent? It reflected a legislative policy decision fully in keeping with our State's prior decisional law. In effect, the Legislature *342 has decided that properties other than farm and woodlands would warrant the protection intended. But what properties, and why? The principle seems to lie in the rationale of the Simmel case, supra. There our highest court stated:
It should be recognized * * * that the landowner or occupier is not an insurer of the infant. He had no duty to periodically inspect the premises in order to ascertain whether third persons, themselves trespassers, might have created dangerous artificial conditions thereon. * * * [At this time] there is no necessity to determine whether the landowner or occupier has a duty to inspect the premises where he himself has created such condition. [28 N.J. at 11]
The Legislature, in full agreement with the above concept, decided to incorporate it in a statute which distinguishes between property where it would be unreasonable to expect that an owner, occupier or lessee could closely supervise access to his land by outside interlopers intent upon using it for recreational purposes, and property where it could be expected that an owner, occupier or lessee would be cognizant of intrusions upon it without need for special inspection. Thus a farmer could not be expected to patrol his land on anything like a regular basis to observe possible interlopers. Likewise a company could own a large tract of land whereon extensive stretches would be almost totally unoccupied while other sections, for example where there were buildings, would be subjected to relatively regular scrutiny by the occupiers. The test as to whether the statute would apply would be the reasonableness of the expectation that a landholder would, without extraordinary effort, maintain a supervision of the property in question which would be expected to reveal whether any persons had entered upon his land for recreational purposes and whether any artificial conditions existed which might pose a danger to such interlopers. Ostroski v. Mt. Prospect Shoprite, Inc., 94 N.J. Super. 374 (App. Div. 1967). In areas where such interlopers may be reasonably expected to be discovered there would be only a limited immunity granted, in regard to gratuitous licensees, where in return for permission to *343 use the land such licensees would be considered to have waived the rights they would otherwise have had. As to other interlopers the previously existing principles of duty were to continue. Where it would be unreasonable to expect that a landowner would be able to detect interlopers on anything but a sporadic basis, the immunity granted would be extended to a point where only "maliciousness or wilfullness" on the part of the landowner would suffice to permit a recovery for injuries suffered.
In effect, our Legislature has thus simply expanded upon the principle of foreseeability central to the holdings in so many of our cases dealing with the duties of landholders to licensees and trespassers upon their properties. Turpan v. Merriman, 57 N.J. Super. 590 (App. Div. 1959), certif. den. 31 N.J. 549 (1960); Taylor v. N.J. Highway Authority, supra.; Scheffer v. Braverman, supra. This is not to say that there is now a duty to inspect for dangerous conditions created by third parties, or to search for dangerous natural conditions. See Simmel v. N.J. Coop. Co., supra; Ostroski v. Mt. Prospect Shoprite, Inc., supra.; Ramundo v. Turi, 92 N.J. Super. 73 (App. Div. 1966) certif. den. 48 N.J. 141 (1966); Callahan v. Dearborn Developments, Inc., 57 N.J. Super. 437 (App. Div. 1959), aff'd 32 N.J. 27 (1960). What it does indicate is that the law of this State is still that
A landowner is liable for injuries sustained by an infant trespasser if the landowner knows or should know that children are likely to trespass [Restatement, Torts, § 339(c)]; and that structure or other artificial condition on landowner's property involves an unreasonable risk of serious bodily harm to them if he fails to maintain proper safeguards [Id. § 339(b)]; if the children, because of their youth, do not discover or realize the risk of harm inherent in the condition [Sec. 339(c)]; and if the utility to the possessor of maintaining the condition is slight as compared to the risk to the child involved [Id. § 339(d)]. [Coughlin v. U.S. Tool Co., Inc., supra., 52 N.J. Super. at 346]
Defendant calls to our notice "the established principle of finality of judgments," and cites to us the eloquent *344 opinion of Judge Fritz in Bauer v. Griffin, 104 N.J. Super. 530, 540 (Law Div. 1969), aff'd 108 N.J. Super. 414 (App. Div. 1970), certif. den. 56 N.J. 245 (1970). The case involved there concerned a settlement based solely upon a set of factual circumstances. Here we are concerned with what this court has determined to be a misinterpretation of the legal effect of a statute, where that misinterpretation was brought to light by a reported decision subsequent to that misinterpretation. To let matters stand as they are would do violence to our basic concepts of justice. To quote Judge Fritz, "Fairness and justice are lodestars without peer." 104 N.J. Super. at 545-546. "* * * [T]he very essence of [R. 4:50-1] (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." Court Investment Co. v. Perillo, 48 N.J. 334, 341 (1966). To limit plaintiff to his complaint as it is presently worded in the light of the recognition of our earlier error would be unjust, oppressive and inequitable. Quagliato v. Bodner, 115 N.J. Super. 133, 138 (App. Div. 1971); Greenberg v. Owens, 31 N.J. 402, 411 (1960) (Jacobs, J. dissenting). We do not have here a trial error, with a later attack upon a judgment. Hodgson v. Applegate, 31 N.J. 29 (1959). Rather, we have a final order, made as a matter of law, upon the construction to be given to plaintiff's complaint and the limitations to be placed upon his possibility of recovery due to the court's interpretation of a statute. The error made here was prior to a trial which has not yet occurred and thus was made "without reference to the evidence in the case." Hodgson v. Applegate, supra, at 40.
"The principle of finality of judgments is one of repose. It dictates that litigation must eventually be ended and that at some point the prevailing party be allowed to rely confidently on the inviolability of his judgment. But it is not an absolute rule, and must *345 be weighed in the balance with the equally salutary principle that justice should be done in every case." Hodgson v. Applegate, supra, at 43.
Plaintiff's motion is granted.